Miguel TREVINO a/k/a Mike Trevino, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–02–353–CR.

Court of Appeals of Texas, Corpus Christi–Edinburg.

June 8, 2006.

Discretionary Review Refused Oct. 18, 2006.

Philip T. Cowen, Brownsville, for appellant.

Armando R. Villalobos, Dist. Atty., Alfredo Padilla, Brownsville, David W. Hartmann, Harlingen, for state.

Before Justices HINOJOSA, YAÑEZ, and CASTILLO.

## OPINION ON MOTION
## FOR REHEARING

Opinion by Justice HINOJOSA.

We issued a concurring opinion in this case on June 9, 2005. Appellant, Miguél Trevino a/k/a Mike Trevino, subsequently filed a motion for rehearing. We grant appellant's motion for rehearing, withdraw our concurring opinion of June 9, 2005, and substitute the following as the opinion of this Court.

A jury found Trevino guilty of one count of murder (count I) and one count of aggravated assault (count II) and assessed his punishment at life imprisonment for the murder and ninety-nine years' imprisonment for the aggravated assault. In four issues, Trevino contends that the trial court erred in denying his motion to sever, in denying his motion to quash the indictment, and in admitting evidence of gang affiliation, and that the evidence is insuffi-

cient to support the convictions. We affirm.

## A. BACKGROUND

On June 8, 2001, Everardo Serrato was traveling southbound on Sam Houston Street in San Benito in a Grand Am, with Michael Meza as his passenger. While stopped at a traffic light, Serrato noticed Trevino approaching in a Jeep Cherokee from the opposite direction. Because Serrato had known Trevino for many years, Serrato thought Trevino wanted to talk. As Serrato started to roll down his window, Trevino opened fire on the Grand Am with a semi-automatic weapon. Serrato immediately reclined his seat in an effort to protect himself. Attempting to escape, Serrato maneuvered the Grand Am out of traffic and fled north on the Expressway frontage road with Trevino in pursuit. While in pursuit, Trevino continued shooting at the Grand Am; half of his body was hanging outside of the Jeep, while a female steered the vehicle. The chase and shooting continued for about fifteen to twenty minutes. When the shooting stopped, Serrato turned onto the first street he reached and pulled into a convenience store parking lot. Serrato ran inside the store and told the clerk to lock the door. As a result of the shooting, Serrato sustained five bullet wounds. Meza sustained four entry wounds and died as a result of his injuries.

## B. SEVERANCE

■■■ In his first issue, Trevino contends the trial court erred in denying his motion to sever. A defendant may be prosecuted in a single criminal action for all offenses arising out of the same criminal episode. TEX. PEN.CODE ANN. § 3.02 (Vernon 2003). However, a defendant has a right to a severance of the offenses. TEX. PEN.CODE ANN.

§ 3.04(a) (Vernon Supp.2005). A motion to sever must be raised before trial. *See Thornton v. State,* 986 S.W.2d 615, 617 (Tex.Crim.App.1999). When a defendant timely requests severance under section 3.04(a), his or her right to a severance is absolute and severance is mandatory. *See Coleman v. State,* 788 S.W.2d 369, 371 (Tex.Crim.App.1990).

Prior to trial, Trevino filed a motion to sever under section 3.04(a), but the trial court denied the motion. Because the right to a severance is absolute, we conclude the trial court erred in denying the motion. *See Coleman,* 788 S.W.2d at 371. However, because severance error is subject to a harm analysis, we must determine whether the trial court's denial of Trevino's motion to sever affected a substantial right. *See Llamas v. State,* 12 S.W.3d 469, 470–71 (Tex.Crim.App.2000). In determining harm, we consider the entire record. *Tovar v. State,* 165 S.W.3d 785, 795 (Tex. App.-San Antonio 2005, no pet.) (*citing Llamas,* 12 S.W.3d at 471).

■ The rule allowing severance rests upon two legitimate concerns: (1) that the jury may convict a "bad man" who deserves to be punished—not because he is guilty of the crime charged but because of his prior or subsequent misdeeds; and (2) that the jury will infer that because the accused committed other crimes, he probably committed the crime charged. *Llamas,* 12 S.W.3d at 471–72; *Tovar,* 165 S.W.3d at 795.

The State argues that any error is harmless because the evidence of each of the crimes would have been admissible in a separate trial of the other offense as same transaction contextual evidence. *See Dominguez v. State,* 62 S.W.3d 203, 208 (Tex.App.-El Paso 2000, pet. ref'd) (holding severance error was harmless because evidence of each crime would be admissible in a separate trial of the other offense as same transaction contextual evidence).

Same transaction contextual evidence results when an extraneous matter is so intertwined with the State's proof of the charged crime that avoiding reference to it would make the State's case incomplete or difficult to understand. *Rogers v. State,* 853 S.W.2d 29, 33 (Tex.Crim.App.1993). We agree with the State that under the facts of this case the jury would have heard the same evidence regardless of whether the offenses were tried together or separately. Because we conclude that any severance error did not affect a substantial right, we overrule Trevino's first issue.

## C. MOTION TO QUASH INDICTMENT

■ In his second issue, Trevino contends the trial court erred in denying his motion to quash the first paragraph of the murder count in the indictment. Specifically, Trevino asserts that the indictment fails to track the language of section 19.02(b)(2) of the Texas Penal Code because it does not include the word "and." Section 19.02(b)(2) provides: "A person commits an offense if he ... intends to cause serious bodily injury *and* commits an act clearly dangerous to human life that causes the death of an individual...." TEX. PEN.CODE ANN. § 19.02(b)(2) (Vernon 2003) (emphasis added). Trevino argues that because the word "and" was not included in the indictment, the indictment fails to allege all the necessary elements of the offense of murder.

■ The sufficiency of an indictment is a question of law and is reviewed de novo. *State v. Moff,* 154 S.W.3d 599, 601 (Tex.Crim.App.2004) (citing *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App. 1997)). The indictment must be specific enough to inform the defendant of the nature of the accusations against him so that he may prepare a defense. *Id.* How-

ever, this due process requirement may be satisfied by means other than the language in the charging instrument. *Kellar v. State,* 108 S.W.3d 311, 313 (Tex.Crim.App. 2003). When a motion to quash is overruled, a defendant suffers no harm unless he did not, in fact, receive notice of the State's theory against which he would have to defend. *Id.* Except in rare cases, a charging instrument that tracks the language of a criminal statute possesses sufficient specificity to provide a defendant with notice of a charged offense, and the State need not allege facts which are merely evidentiary in nature. *See State v. Edmond,* 933 S.W.2d 120, 128 (Tex.Crim. App.1996).

The indictment alleged that:

MIGUEL TREVINO A/K/A MIKE TREVINO [Defendant], on or about the 8TH day of JUNE, 2001 and anterior to the presentment of this indictment, in the County of Cameron and State of Texas, did then and there, with intent to cause serious bodily injury to an individual, namely, MICHAEL MEZA, commit an act clearly dangerous to human life, to-wit: by shooting MICHAEL MEZA with a firearm, that caused the death of said MICHAEL MEZA.

The indictment clearly tracks the language of section 19.02(b)(2) of the penal code and alleges all the requisite elements: that Trevino "did then and there" (1) with intent to cause serious bodily injury, (2) to Michael Meza, (3) commit an act clearly dangerous to human life, (4) by shooting Michael Meza with a firearm, (5) that caused the death of Michael Meza. *See* TEX. PEN.CODE ANN. § 19.02(b)(2) (Vernon 2003). We conclude that Trevino had sufficient notice the State was charging him with the offense of murder under section 19.02(b)(2). *See id.* We hold that the absence of the word "and" is not fatal. Trevino's second issue is overruled.

## D. EVIDENCE OF GANG AFFILIATION

In his third issue, Trevino contends the trial court erred by admitting evidence of gang affiliation during the guilt-innocence phase of the trial. In response, the State argues that the evidence was relevant and admissible for the following two reasons: (1) it demonstrated the primary motive for the murder and aggravated assault, and (2) it constituted the res gestae of the murder itself.

In determining whether a trial court erred in admitting evidence, the standard of review is abuse of discretion. *McDonald v. State,* 179 S.W.3d 571, 576 (Tex.Crim.App.2005) (citing *Mozon v. State,* 991 S.W.2d 841, 846–47 (Tex.Crim. App.1999)). A trial court abuses its discretion when its decision is so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App.1991) (op. on reh'g).

Texas Rule of Evidence 404(b) provides that evidence of other crimes, wrongs, or acts is not admissible to prove a person's character and/or to show that the person acted in conformity with that character. *See* TEX.R. EVID. 404(b). However, such evidence may be admitted if it is relevant to motive, identity, intent, opportunity, preparation, plan or absence of mistake. *Id.* As the Texas Court of Criminal Appeals has explained, "It has long been the rule in this State that the jury is entitled to know all relevant surrounding facts and circumstances of the charged offense; an offense is not tried in a vacuum." *Moreno v. State,* 721 S.W.2d 295, 301 (Tex.Crim. App.1986) (citing *Archer v. State,* 607 S.W.2d 539, 542 (Tex.Crim.App.1980)).

The State's theory was that Trevino, a member of the "Texas Syndicate," intentionally opened fire on Serrato's vehicle because Serrato was a member of a rival

sect of the same gang. Gang affiliation evidence is relevant evidence of motive to show intent to kill and is permissible under rule 404(b). *See Medina v. State*, 7 S.W.3d 633, 644 (Tex.Crim.App.1999) (stating that evidence of gang affiliation "was most relevant as to appellant's motive and intent on the night of the offense"); *Cunningham v. State*, 982 S.W.2d 513, 523 (Tex.App.-San Antonio 1998, pet. ref'd) (holding trial counsel was not ineffective for failing to object to evidence of defendant's gang affiliation because such evidence was admissible to show motive); *Williams v. State*, 974 S.W.2d 324, 331 (Tex.App.San Antonio 1998, pet. ref'd) (holding evidence of gang affiliation admissible under rule 404(b) to show motive). Because Trevino's affiliation with a rival sect of the gang was relevant to show the motive for the shooting, rather than mere conformity with character, we hold the trial court did not abuse its discretion by allowing it. Trevino's third issue is overruled.

We note that evidence admissible under rule 404(b) may be excluded under Texas Rule of Evidence 403 if the danger of unfair prejudice substantially outweighs its probative value. *See* TEX.R. EVID. 403. However, Trevino failed to object under rule 403, and thus failed to preserve any such error. *See* TEX.R.APP. P. 33.1(a); *Montgomery*, 810 S.W.2d at 388.

### E. SUFFICIENCY OF THE EVIDENCE

▉▉▉ In his fourth issue, Trevino contends the evidence is legally and factually insufficient to support his convictions for the murder of Meza and the aggravated assault of Serrato. Specifically, Trevino contends the evidence is insufficient to prove (1) the requisite intent for murder, and (2) the element of identity for both murder and aggravated assault.

▉▉▉ In a legal sufficiency review, we must examine the evidence presented in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex.Crim.App.2004) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). In making this determination, the reviewing court considers all the evidence admitted that will sustain the conviction, including improperly admitted evidence. *Conner v. State*, 67 S.W.3d 192, 197 (Tex.Crim.App. 2001). Questions concerning the credibility of the witnesses and the weight to be given their testimony are to be resolved by the trier of fact. *Mosley v. State*, 983 S.W.2d 249, 254 (Tex.Crim.App.1998). Evidence is not rendered insufficient when conflicting evidence is introduced. *Matchett v. State*, 941 S.W.2d 922, 936 (Tex.Crim. App.1996). The reviewing court must assume that the fact finder resolved conflicts, including conflicting inferences, in favor of the verdict, and must defer to that resolution. *Id.* The fact finder may use common sense and apply common knowledge, observation, and experience gained in ordinary affairs when giving effect to the inferences that may be reasonably drawn from the evidence. *Booker v. State*, 929 S.W.2d 57, 60 (Tex.App.-Beaumont 1996, pet. ref'd).

▉▉▉ In a factual sufficiency review, we review all the evidence in a neutral light and determine whether evidence supporting the verdict is too weak to support the finding of guilt beyond a reasonable doubt or if evidence contrary to the verdict is strong enough that the beyond-a-reasonable-doubt standard could not have been met. *Threadgill v. State*, 146 S.W.3d 654, 664 (Tex.Crim.App.2004). Our neutral review of all the evidence, both for and

against the challenged elements, looks to determine whether proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or whether proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *See Zuniga v. State*, 144 S.W.3d 477, 484–85 (Tex.Crim.App.2004). A proper factual sufficiency review must consider the most important evidence that the appellant claims undermines the jury's verdict. *Sims v. State*, 99 S.W.3d 600, 603 (Tex.Crim.App.2003). However, we approach a factual sufficiency review with appropriate deference to avoid substituting our judgment for that of the fact finder. *Johnson v. State*, 23 S.W.3d 1, 6–7 (Tex. Crim.App.2000). Every fact need not point directly and independently to the accused's guilt. *Vanderbilt v. State*, 629 S.W.2d 709, 716 (Tex.Crim.App.1981). A conclusion of guilt can rest on the combined and cumulative force of all the incriminating circumstances. *Id.*

■ In conducting our review, we measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge for the case. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App.1997); *Adi v. State*, 94 S.W.3d 124, 131 (Tex.App.-Corpus Christi 2002, pet. ref'd). This hypothetically correct jury charge would set out the law, be authorized by the indictment, not necessarily increase the State's burden of proof or necessarily restrict the State's theories of liability, and adequately describe the particular offense for which the defendant was tried. *Malik*, 953 S.W.2d at 240.

A person commits murder if he intentionally or knowingly causes the death of an individual or intends to cause seriously bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. *See* TEX. PEN. CODE ANN. § 19.02(b)(1), (2) (Vernon 2003).

A person commits aggravated assault if he intentionally, knowingly, or recklessly causes bodily injury to another and either (1) uses or exhibits a deadly weapon during commission of the assault, or (2) causes serious bodily injury to another. *See* TEX. PEN.CODE ANN. §§ 22.01, 22.02 (Vernon Supp.2005). "Serious bodily injury" means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. TEX. PEN.CODE ANN. § 1.07(a)(46) (Vernon Supp.2005). "Deadly weapon" is defined as anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. TEX. PEN.CODE ANN. § 1.07(a)(17)(B) (Vernon Supp.2005).

■ A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. TEX. PEN.CODE ANN. § 6.03(a), (b) (Vernon 2003). Intent is almost always proven by circumstantial evidence. *Manrique v. State*, 994 S.W.2d 640, 649 (Tex.Crim.App.1999) (J. Meyers concurring) (citing *Robles v. State*, 664 S.W.2d 91, 95 (Tex.Crim.App.1984)). A jury may infer intent from any facts which tend to prove its existence, including the acts, words, and conduct of the accused, the method of committing the crime, and from the nature of wounds inflicted on the victims. *Id.* (citing *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex.Crim.App.1991)). If a deadly weapon is used in a deadly manner, the inference is almost conclusive that the defendant intended to kill. *Adanandus v. State*, 866 S.W.2d 210, 215 (Tex. Crim.App.1993). In fact, when a deadly weapon is fired at close range and death results, the law presumes an intent to kill. *Womble v. State*, 618 S.W.2d 59, 64 (Tex. Crim.App.1981).

Under the theory of transferred intent, a person can be held criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that a different person was injured, harmed, or otherwise affected. TEX. PEN.CODE ANN. § 6.04(b)(2) (Vernon 2003).

Trevino asserts that Meza's death was accidental and not intentional. He argues that because the definition of transferred intent was not included in the jury charge, the jury could not find him guilty under such theory.

■ Transferred intent is raised when there is evidence that a defendant, with the required culpable mental state, intends to injure or harm a specific person but injures or harms a different person or both. *Manrique*, 994 S.W.2d at 647 (J. McCormick concurring). Furthermore, under *Malik*, the hypothetically correct jury charge would include the doctrine of transferred intent. *See Malik*, 953 S.W.2d at 240. Indeed, the *Malik* court itself anticipated the review of theories that were raised by the evidence, but not charged in the jury charge, or even the indictment, where such theories are permitted by law and authorized by the indictment. *Swartz v. State*, 61 S.W.3d 781, 786 (Tex.App.-Corpus Christi 2001, pet. ref'd); *see Malik*, 953 S.W.2d at 239 ("[W]e recognize that measuring sufficiency by the indictment is an inadequate substitute because some important issues relating to sufficiency—e.g. the law of parties and the law of transferred intent—are not contained in the indictment.").

The evidence shows that Trevino approached Serrato's vehicle while it was stopped at an intersection and began shooting at the driver's side of Serrato's vehicle with a semi-automatic weapon. Four shots shattered the driver's side window and one shot pierced the driver's side door. Serrato sustained bullet wounds to his face and arms, which required surgery. Meza, in the passenger seat, sustained four bullet wounds resulting in his death. Trevino continued to shoot at Serrato's vehicle while in pursuit.

Serrato positively identified Trevino as the shooter. He testified that he had known Trevino for over fifteen years, and they were once in the same prison unit. Serrato testified that he and Trevino are both members of the Texas Syndicate gang, but Serrato is a veteran member, whereas Trevino is a member of the "new wave," and that the "new wavers" have been killing older members.

Carol Cruz, an eyewitness to the shooting, was unable to identify Trevino from a photo lineup a few days after the shooting. However, at trial, she identified Trevino as the shooter.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Trevino committed the offenses of murder [1] and aggravated assault. *See Escamilla*, 143 S.W.3d at 817. Furthermore, viewing the evidence in a neutral light, we conclude that the evidence supporting the verdict is not too weak to support the jury's finding of guilt beyond a reasonable doubt, or that the contrary evidence is strong enough that the beyond-a-reasonable-doubt standard could not have been met. *See Threadgill*, 146 S.W.3d at 664. From the

---

1. The indictment charged appellant with murder under subsections 19.02(b)(1) and 19.02(b)(2) of the penal code. The jury returned a verdict finding appellant "guilty of murder, as charged in the indictment." When a general verdict is returned and the evidence is sufficient to support a finding under any of the paragraphs submitted, the verdict will be applied to the paragraph finding support in the facts. *Manrique v. State*, 994 S.W.2d 640, 642 (Tex.Crim.App.1999).

evidence, the jury could reasonably infer that by opening fire with a semi-automatic weapon on an occupied vehicle, Trevino specifically intended to kill either or both of the occupants of the vehicle, *see Adanandus*, 866 S.W.2d at 215, or under the theory of transferred intent, the jury could reasonably infer that Trevino intended to shoot and kill Serrato, but instead killed Meza, *see* TEX. PEN.CODE ANN. § 6.04(b)(2). Furthermore, regarding identity, the jury, being the sole judge of the credibility of the witnesses, was free to accept or reject the evidence before it, and in doing so, concluded that Trevino was the shooter. *See Earls v. State*, 707 S.W.2d 82, 85 (Tex.Crim.App.1986). Accordingly, we hold the evidence is legally and factually sufficient to support the jury's verdict. Trevino's fourth issue is overruled.

The judgment of the trial court is affirmed.

Concurring Opinion by Justice CASTILLO.

Justice CASTILLO concurring.

Respectfully, I agree to grant the motion for rehearing. In his motion, appellant Miguel Trevino essentially asserts that, on original submission, the panel majority handed down a "concurrence" which was the true majority opinion (1) without reviewing the points of error raised, (2) without addressing every issue raised and necessary to final disposition of the appeal, *see* TEX.R.APP. P. 47.1, and (3) without stating the basic reasons for the decision, *see* TEX.R.APP. P. 47.4. Thus, he argues, he was denied an effective review of the points of error raised on appeal and the opportunity for further review. I agree.

A court of appeals must hand down a written opinion that addresses every issue raised and necessary to final disposition of the appeal. *See* TEX.R.APP. P. 47.1. We must also address an appellee's reply point including, without limitation, (1) that the appellant's point was not preserved for review and (2) even an alternative argument in an appellee's reply. *See Kombudo v. State*, 171 S.W.3d 888, 889 (Tex.Crim. App.2005) (citing *Weatherford v. State*, 828 S.W.2d 12 (Tex.Crim.App.1992) and *Light v. State*, 15 S.W.3d 104, 108 (Tex.Crim. App.2000)). The appellate court is not left free to pick and choose which facets of the reply argument it will address. *See Light*, 15 S.W.3d at 108. The requirement that the appellate court address every issue necessary to dispose of an appeal comprehends addressing alternative arguments as well as arguments that are more distinct in their topics.[1] *Id.* Further, in an appeal seeking factual sufficiency review, we must "show our work" by considering "the most important evidence that appellant claims undermines the jury's verdict." *See Sims v. State*, 99 S.W.3d 600, 603 (Tex.Crim. App.2003).

Because on original submission the panel majority handed down a "concurrence" without reviewing the points of error raised, without addressing every issue raised and necessary to the final disposition of the appeal, and without stating the basic reasons for the "concurrence," I join in the decision to grant the motion for rehearing. *See* TEX.R.APP. P. 47.1, 47.4; *Kombudo*, 171 S.W.3d at 889; *Light*, 15 S.W.3d at 108. Applying the above cited, well-settled principles to this appeal, as I did on original submission, I write separately.[2] For the reasons that follow, I concur with the decision to affirm.

---

1. Importantly, *Light* is not limited to factual sufficiency review. *Light v. State*, 15 S.W.3d 104, 108 (Tex.Crim.App.2000).

2. The majority and I diverge with respect to application of these principles. I note that this appeal on original submission was one of three cases in which the panel majority has

## I. BACKGROUND

### A. The Appeal

As the majority correctly states, a jury convicted Miguel Trevino of murder and aggravated assault. The jury's verdict at punishment was life imprisonment for murder, 99 years for aggravated assault, and a $10,000 fine for each count. The trial court entered judgment reflecting the jury's verdict. By four points of error, Trevino complains of the denial of his motion to sever, the denial of his motion to quash the indictment, the admission of evidence of gang affiliation, and the sufficiency of the evidence.

### B. The Indictment

The indictment alleges two substantive counts and an enhancement count. In count one, the indictment contained two paragraphs, each accusing Trevino of murdering Michael Meza under two of the three statutory forms of the offense. The State alleged in count one that on or about June 8, 2001, Trevino, with the intent to cause serious bodily injury to Meza, committed an act clearly dangerous to human life by shooting Meza with a firearm that caused his death, under section 19.02(b)(2) of the Texas Penal Code.[3] Count one also alleged that Trevino intentionally or knowingly caused the death of Meza by shooting him with a firearm, in violation of section 19.02(b)(1) of the Texas Penal Code.[4]

In count two, the State alleged that Trevino intentionally, knowingly, or recklessly caused bodily injury to Everardo Serrato by shooting him with a firearm.

### C. Relevant Facts

On June 8, 2001, between 6:00 and 7:30 p.m., Everardo Serrato stopped at a traffic light while taking his friend, Mike Meza, home. Vehicles were both in front of and behind his Grand Am. Serrato had known Meza for about three years and the two were "always together." At the intersection, Serrato noticed a late-model Jeep Cherokee traveling in the opposite direction. Serrato recognized the driver as appellant Miguel Trevino, whom he had

---

written a "concurring opinion." *See Mata v. State*, No. 13–02–165–CR, 2005 Tex.App. LEXIS 3679 (Tex.App.-Corpus Christi, May 12, 2005, no pet.); *Elizondo v. State*, No. 13–01–619–CR, 2005 Tex.App. LEXIS 3680 (Tex. App.-Corpus Christi, May 12, 2005, no pet.). Including the opinion in the present appeal on original submission, the three majority concurring opinions are virtually identical. *Elizondo* and the present appeal involved multiple counts, multiple victims, and convictions of murder and aggravated assault. *Mata* involved a murder conviction. Because the procedure of handing down an opinion without compliance with rules 47.1 and 47.4 has now occurred in three appeals involving murder convictions, I respectfully conclude that the procedure is an improper departure from the accepted and usual course of judicial proceedings and, where it can be remedied as here, we must do so without pause. *See* TEX. R.APP. P. 66.3(f) (providing reasons for granting review by the Texas Court of Criminal Appeals of our opinions). In his motion for

rehearing in this case, Trevino correctly points out that the concurrence on original submission was the true majority opinion and that it rejected the only analysis of the points of error raised. The State filed a response as we requested. *See* TEX.R.APP. P. 49.2. The State generally recognizes that, on original submission, the majority concurred in the judgment only.

3. Section 19.02(b)(2) of the Texas penal code states that a person commits an offense if he intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. *See* TEX. PEN.CODE ANN. § 19.02(b)(2) (Vernon 2003).

4. Section 19.02(b)(1) of the Texas penal code states that a person commits an offense if he intentionally or knowingly causes the death of an individual. *See* TEX. PEN.CODE ANN. § 19.02(b)(1) (Vernon 2003).

known for more than fifteen years. At one time, Trevino and Serrato were in the same prison unit.

As the Cherokee neared Serrato's vehicle, Serrato thought Trevino was going to talk to him as he was about to roll down his window. Trevino then shot at Serrato with a semiautomatic gun. Serrato immediately reclined his seat all the way back. More than five shots were fired, but Serrato could not say exactly how many. Serrato sustained bullet wounds to his arms, his chest, and his bottom lip. Meza sustained four entry wounds on the back of his left shoulder. Meza died as a result of his injuries.

Serrato maneuvered his vehicle out of traffic and drove off, "running for his life." In his rearview mirror, he saw Trevino in pursuit, "holding half of his body out" of the moving Cherokee, aiming, and continuing to shoot. Two other passengers were in the Cherokee with Trevino. Serrato saw the woman in the front seat hold the steering wheel as Trevino shot. Trevino appeared to rush the woman to provide him with another clip so that he could reload his gun. Trevino continued to shoot for about 15 to 20 minutes, still in pursuit. Serrato testified that the shooting stopped when Trevino either dropped the gun or ran out of bullets. As soon as the shooting stopped, Serrato turned on the first street he reached and pulled into a convenience store parking lot.

Before the shooting, Alfredo Gomez was stopped at the same traffic light. He saw a Cherokee pull into the turning lane in front of his van. After the light changed and Gomez proceeded, he heard gunshots. He saw a Grand Am parked on the inside lane. He saw the Cherokee take off and park in a lot and then the Grand Am took off, making a fast turn at the intersection. The driver's side window of the Grand Am was shattered.

Carol Cruz testified she was stopped at the same intersection and saw the Grand Am make a complete stop. She saw the Cherokee approach the traffic light and stop. She saw a man wearing a white tank top and a girl next to him in the front seat and another man in the back seat of the vehicle. Cruz saw the driver pull out a gun, "literally sticking out of" the Cherokee, and shoot at the Grand Am. The man in the rear seat of the Cherokee was encouraging the driver to shoot. Cruz heard six shots. She saw the Cherokee proceed through the intersection and make two U-turns, ending up behind her. She testified that the Cherokee then passed her traveling between seventy and eighty miles per hour and appeared to try to catch up to the Grand Am. At the convenience store where Serrato stopped after the shooting, Veronica Tinsley, a correctional officer, saw a bloodied and distraught man exit the driver side of his vehicle. He told her he was scared and asked for help because he had been shot. She accompanied him inside the store and told him to relax. Serrato responded, "They're after me, they're after me." She returned to Serrato's vehicle and checked the passenger's pulse for vital signs; she believed he was dead. Returning to Serrato, Tinsley asked him about the shooter. Serrato said he knew who shot him but he didn't give a name.

Detective Carlos Vela testified that the Grand Am had its rear left tire blown out. A photograph of the vehicle admitted in evidence shows four bullet holes through the driver side window and another bullet hole through the metal part of the driver side door. Vela found no bullet casings or weapons inside the Grand Am. Patrolman Danny Leal testified that the driver's side window tint was peeled off toward the inside indicating the bullets came from the outside into the car.

Police officer Emilio Weaver responded to a call regarding shots being fired involving two vehicles traveling to Harlingen from San Benito. Weaver testified that when he reached the convenience store where Serrato parked, Serrato told him that Trevino had shot him because Serrato was a member of a cadre.

Serrato testified he had been to prison three times for firearms and cocaine convictions. While there, he became a member of a cadre for his own protection. According to Serrato, Trevino was a member of the same cadre; but, Serrato was a veteran member and Trevino was a member of the "new wave." Serrato explained that "the younger generation is getting on there just to make a name for themselves ... they don't like the idea of us telling them what to do or how to run it, they decide to wipe us off the map." "New wavers," he testified, is what they are called, and they "don't like old guys doing business." If a new waver takes out an old member, "you establish a rank position by doing something like that, that draws your attention as far as your group." Meza, the deceased, was a prospect "in training" to become a cadre member. Serrato did not know the identity of Meza's sponsor, but "knew he was one of me, that's why he hung out with me." Serrato denied giving Meza advice about the cadre.

At trial, the defense called police sergeant A.R. Garcia, who testified that he did not find evidence that the tire of Serrato's vehicle came off because of the shooting. He found no casings at the intersection where the shooting allegedly occurred. On cross-examination, he testified that a hole under the rear license plate of the Grand Am appeared to be a bullet hole. He found nothing to indicate that a bullet traveled from the inside to the outside of the vehicle. He testified that firing a gun from inside a vehicle is an act that clearly intends to cause serious bodily injury to a person.

The defense re-called Serrato, who could not explain why the passenger-side window of the Grand Am was rolled down in the pictures admitted in evidence. He testified he might have rolled it down to get some air. He testified that his usual sitting position when driving was leaning back. He testified that when the shooting began, he reclined the seat completely.

During both the culpability and punishment phases of the trial, the State called an expert, Clemente Rodriguez, to testify about gang activity. Rodriguez is a security threat group officer with the Institutional Division of the Texas Department of Criminal Justice. He testified that a security threat group is comprised of offenders the department has determined to be a threat to the physical safety of other offenders, the staff, and the public because of their organized criminal activity. One such group is the cadre, whose purpose is to control other offenders and their activities in the prison system. He testified that one way to identify its members is by a tattoo. Rodriguez reviewed Trevino's records, which indicated he was a known member of the cadre. Rodriguez testified that it was not unusual to see violence among members of the same cadre and that one of the cadre's rules is that any member who becomes a liability to the group while in prison is to be killed or executed. The cadre has two factions that are at odds with each other. The first faction includes the older members who have been in the cadre longer than the second faction. The second faction separated themselves because they disagreed with the first group over a peace agreement with another cadre. The factions of the cadre are at odds with each other. According to Rodriguez, the second faction wanted to be the controlling faction of the

cadre. Rodriguez testified that any member who wanted out of or went against the cadre was to be killed. According to Rodriguez, the security threat groups have codes, rules, regulations, and constitutions by which members must abide. One rule is membership for life, "Blood in—blood out."

### III. SEVERANCE

In his first point of error, Trevino complains the trial court erred in denying his motion to sever the two offenses. He concedes that section 3.02 of the Penal Code authorized the State to consolidate the two counts for conduct in the same criminal episode. TEX. PEN.CODE ANN. § 3.02 (Vernon 2003). However, he asserts that under section 3.04 of the Penal Code, he had the right to severance of the offenses. TEX. PEN.CODE ANN. § 3.04 (Vernon 2003). The State responds that the murder and aggravated assault charges were not joined under Penal Code section 3.02 and, thus, section 3.04(a) does not apply. The State argues that the offenses constituted one indivisible and simultaneous criminal transaction. Alternatively, the State argues that error, if any, was harmless.

### A. The Defendant's Absolute Right to Severance

A defendant may be prosecuted in a single trial for all offenses arising out of the same criminal episode. TEX. PEN. CODE ANN. § 3.02(a) (Vernon 2003). The statute authorizes the consolidation and joinder of prosecutions against a defendant for offenses arising out of the same criminal episode. Craig v. State, 594 S.W.2d 91, 94 (Tex.Crim.App.1980). "Criminal episode" means the commission of two or more offenses, regardless of whether the harm is directed toward or inflicted upon more than one person or item of property. TEX. PEN.CODE ANN. § 3.01 (Vernon 2003). A single "criminal episode," as defined in Penal Code section 3.01, includes all offenses that form a part of one criminal "transaction." Cobb v. State, 85 S.W.3d 258, 266 (Tex. Crim.App.2002).[5] The purpose of the joinder rule is to achieve "convenience and efficiency, permitting one trial on the joined counts, and treating the separate offenses as one for sentencing purposes." Id. at 265 (citing Haliburton v. State, 578 S.W.2d 726, 729 (Tex.Crim.App.1979)).

When two offenses have been consolidated or joined for trial under section 3.02, the defendant "shall have a right to a severance of the offenses." TEX. PEN. CODE ANN. § 3.04(a) (Vernon 2003).[6] If the request for severance is timely made, the defendant's right to a severance is absolute and severance is mandatory. See Coleman v. State, 788 S.W.2d 369, 371 (Tex.Crim.App.1990) (en banc); Overton v.

---

**5.** Although the legislature did not define the term *"same* criminal transaction," in *Feldman v. State*, 71 S.W.3d 738, 752–53 (Tex. Crim.App.2002), a capital murder case, the court of criminal appeals interpreted that phrase to mean "a continuous and uninterrupted chain of conduct occurring over a very short period of time ... in a rapid sequence of unbroken events." *Feldman*, 71 S.W.3d at 752–53 (citing *Jackson v. State*, 17 S.W.3d 664, 669 (Tex.Crim.App.2000)); *see also Rios v. State*, 846 S.W.2d 310, 311–12 (Tex.Crim. App.1992), *cert. denied*, 507 U.S. 1051, 113 S.Ct. 1946, 123 L.Ed.2d 651 (1993); *Vuong v.*

*State*, 830 S.W.2d 929, 941 (Tex.Crim.App. 1992) (en banc), *cert. denied*, 506 U.S. 997, 113 S.Ct. 595, 121 L.Ed.2d 533 (1992).

**6.** Article 21.24(a) of the Code of Criminal Procedure states:

(a) Two or more offenses may be joined in a single indictment, information, or complaint, with each offense stated in a separate count, if the offenses arise out of the same criminal episode, as defined in Chapter 3 of the Penal Code.

TEX.CODE CRIM. PROC. ANN. art. 21.24(a) (Vernon 1989).

*State*, 552 S.W.2d 849, 850 (Tex.Crim.App. 1977); *see also Graham v. State*, 19 S.W.3d 851, 852 n. 2 (Tex.Crim.App.2000). To be timely, the defendant's request for separate trials or objection to their consolidation must occur before the jury is sworn. *See Thornton v. State*, 957 S.W.2d 153, 156 (Tex.App.-Fort Worth 1997), *aff'd*, 986 S.W.2d 615 (Tex.Crim.App.1999) (per curiam). The defendant's complaint is sufficient if it apprises the trial judge that he does not desire to have the offenses joined in a common trial. *See Ford v. State*, 782 S.W.2d 911, 912 (Tex.App.-Houston [14th Dist.] 1989, no pet.). A defendant may so inform the court by objection, request or motion to sever. *Guia v. State*, 723 S.W.2d 763, 768 (Tex.App.-Dallas 1986, writ ref'd). It is error to refuse such a motion, even if made orally on the day of trial. *Murphy v. State*, 663 S.W.2d 604, 609 (Tex.App.-Houston [1st Dist.] 1983, no writ).

Trevino filed a motion to sever under section 3.04(a), requesting that the two alleged offenses be severed and tried separately. As grounds, Trevino asserted that the murder and aggravated assault charges involved two different victims and as such were two different crimes. The trial court stated in open court that it considered the motion. The written order denying the motion is in the record. Because the right to sever is absolute, the trial court erred in denying Trevino's motion.

### B. Harm Analysis

Before we may reverse the convictions, we must first determine whether Trevino was harmed by the trial court's error. TEX.R.APP. P. 44.2. Severance error is subject to a harm analysis. *See Llamas v. State*, 12 S.W.3d 469, 470 (Tex.Crim. App.2000); *see also Motilla v. State*, 78 S.W.3d 352, 358 (Tex.Crim.App.2002). A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as whole, has fair assurance that the error did not influence the jury, or had but a slight effect. *See* TEX.R.APP. P. 44.2(b); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App.1998); *see generally King v. State*, 953 S.W.2d 266, 271 (Tex. Crim.App.1997). If the error had no influence or only a slight influence on the verdict, it is harmless. *Johnson*, 967 S.W.2d at 417. To judge the likelihood that the jury's decision was adversely affected by non-constitutional error that does not affect substantial rights, appellate courts must consider everything in the record including: (1) all the testimony or physical evidence admitted for the jury's consideration; (2) the nature of the evidence supporting the verdict; (3) the character of the alleged error and how it might be considered in connection with other evidence in the case; (4) the jury instructions; (5) the State's theory and any defensive theories; (6) closing arguments; (7) voir dire, if applicable; and (8) overwhelming evidence of guilt. *Motilla*, 78 S.W.3d at 357–58; *Llamas*, 12 S.W.3d at 471. Though not dispositive, the evidence of the defendant's guilt is a relevant factor in conducting a harm analysis under rule 44.2(b). *Motilla*, 78 S.W.3d at 360.

Thus, Trevino is not entitled to reversal unless the error affected a substantial right. *See id.*; TEX.R.APP. P. 44.2(b). Rule 44.2(b) requires us to examine error in relation to the entire proceeding and determine whether it had a substantial and injurious effect or influence in determining the jury's verdict. *Rodriguez v. State*, 90 S.W.3d 340, 357–58 (Tex.App.-El Paso 2001, pet. ref'd.). If the reviewing court determines that the error did not have an influence on the jury, or "had but very slight effect," the verdict must stand. *Id.* at 358. Stated another way, the error must have affected the outcome of the lower court proceedings. *Id.* If the rec-

ord fails to show that the error had such an impact, it cannot be said to affect a substantial right, and we are mandated to disregard the error. *Id.* If we have "grave doubts" about whether an error did not affect the outcome, we must treat the error as if it did. *Id.*

Various potentialities for harm other than consecutive sentencing exist when a defendant is denied the right to severance of offenses. *Llamas,* 12 S.W.3d at 471. The rule allowing severance rests upon two legitimate concerns: (1) "that the jury may convict a bad man who deserves to be punished—not because he is guilty of the crime charged but because of his prior or subsequent misdeeds; and (2) that the jury will infer that because the accused committed other crimes, he probably committed the crime charged." *Id.* at 471–72. Some kinds of error will never be harmless under the rule 44.2(b) test and other kinds of error will rarely be harmless. *See id.; see also Cain v. State,* 947 S.W.2d 262, 264 (Tex.Crim.App.1997) (en banc).

Here, Trevino does not address harmful error. The State asserts that Trevino's substantial rights were not affected and the error had no injurious effect on the jury's verdict. The State argues that: (1) the two crimes occurred simultaneously and instantaneously, and they shared a common *mens rea;* (2) the evidence of each of the crimes would have been admissible in a separate trial of the other offenses as "same transaction contextual evidence," under *Rogers v. State,* 853 S.W.2d 29, 32–34 (Tex.Crim.App.1993) (en banc), and *Foster v. State,* 976 S.W.2d 732, 733–34 (Tex.App.-Tyler 1998, pet. ref'd.) (per curiam); (3) because the jury would have heard the same evidence whether the offenses were tried in separate trials or in one trial, the joinder in a single trial could not have affected Trevino's substantial rights; and (4) Trevino benefitted from one charging instrument in that he did not

receive consecutive sentences and was required to be tried only once.

The record contains sufficient data for a harm analysis. *See Llamas,* 12 S.W.3d at 471. During voir dire, the State mentioned the two offenses in connection with its burden to prove both offenses. Defense counsel addressed the two offenses in connection with the range of punishment for each. During opening statements, the State related its theory that Trevino intended to kill a member of the same cadre and, as a result, injured his targeted victim but killed a passenger in the vehicle involved. During the culpability phase of the trial, the State called eyewitnesses who testified that Trevino fired shots into a vehicle stopped at a traffic light, pursued the vehicle, and continued shooting while in pursuit. The State introduced photographs of the victims of the shooting and their injuries. The State's witnesses relayed how one victim survived and the other died as the result of the bullet wounds. The State introduced photographs showing bullet holes through the driver's side window. During the penalty phase of the trial, the trial court read the charge to the jury containing the range of punishment for each offense.

In his argument to the jury, defense counsel told the jury that Meza was killed accidentally. Arguing mitigating circumstances, defense counsel stated that, although Meza was a family man, he was involved with drugs and the cadre, and that Serrato was similarly involved in the cadre. The prosecutor argued that Trevino committed "cold-blooded acts of violence. You [the jury] found him guilty of aggravated assault on Everardo Serrato; you found him guilty of murdering Michael Meza, and now you've heard evidence that he was apprehended because he was beating a woman unconscious with this bottle." The prosecutor mentioned both offenses

twice more in asking the jury to assess punishment at life for the murder offense.

Same transaction contextual evidence, namely evidence of other offenses connected with the primary offense, is admissible not because it has evidentiary value but because when narrating the events of the charged offense, it is impractical to avoid describing these other offenses. *See* TEX.R. EVID. 404(b); *Rogers*, 853 S.W.2d at 33, (citing *Mayes v. State*, 816 S.W.2d 79, 84–87 (Tex.Crim.App.1991)) (" 'Same transaction contextual evidence' is deemed admissible where several crimes are intertwined or blended with one another."). I agree with the State that the jury would have heard the same evidence whether the offenses were tried separately in different trials or together in one. The joinder of the offenses in a single trial could not have affected Trevino's substantial rights.

### C. Disposition

Examination of the *Llamas* and *Motilla* factors as applied to the record leads me to conclude that the error did not affect the outcome of the lower court proceedings, and Trevino's substantial rights were not affected. Thus, I conclude that Trevino was not harmed by the trial court's denial of his motion to sever. *See* TEX. R.APP. P. 44.2(b); *Motilla*, 78 S.W.3d at 355; *Llamas*, 12 S.W.3d at 471–72; *Johnson*, 967 S.W.2d 410 at 417; *King*, 953 S.W.2d at 271.

Accordingly, I concur with the majority's decision to overrule Trevino's first point of error.

## IV. MOTION TO QUASH THE INDICTMENT

In his second point of error, Trevino asserts the trial court erred in denying his motion to quash count one of the indictment [7] alleging murder. Trevino argues that the State failed to track the language of section 19.02(b)(2) [8] by not including the word "and." Including the word "and" would require the State to show that Trevino had intent to cause serious bodily injury and committed an act clearly dangerous to human life that caused a death as required by section 19.02(b)(2). He states that without the complained-of conjunctive in the indictment, the State did not allege all the elements of the offense. The State responds that the indictment fully and accurately conveys the meaning of the statute and, more importantly, that the jury charge contained the word "and."

Trevino complains that the jury could have been misled to convict him on a lesser standard of intent than required by statute. The State argues that the record does not demonstrate any confusion on the jury's part. Trevino also complains he did not have proper notice of how the State would attempt to proceed on the allegations and thus was forced to defend a case in which a lesser standard than the re-

---

7. In the motion, Trevino requested the Court to quash count one in the indictment because the State relied on section 19.02(b)(2) of the Texas penal code for a result-oriented murder charge.

8. Section 19.02(b)(2) of the Texas penal code reads as follows:

A person commits an offense if he:
(1) intentionally or knowingly causes the death of an individual;
(2) intends to cause seriously bodily injury and commits an act clearly dangerous to human life that causes the death of an individual; or
(3) commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

TEX. PEN.CODE ANN. § 19.02(b)(2) (Vernon 2003).

quired "intentionally and knowingly" intent element was applied. Further, he asserts, the failure to give proper notice was prejudicial. The State responds that the complaint is "a stylistic thing, a comma can also stand for a conjunction."

### A. Standard of Review

The sufficiency of an indictment is a question of law. *State v. Moff,* 154 S.W.3d 599, 601 (Tex.Crim.App.2004). We review a trial court's ruling on a motion to quash de novo. *Id.* Prior to the Court of Criminal Appeals' decision in *Guzman v. State,* 955 S.W.2d 85 (Tex.Crim.App.1997) (en banc), abuse of discretion was the standard employed when reviewing a trial court's decision to quash an indictment. *Id.* The amount of deference appellate courts afford a trial court's rulings depends upon which "judicial actor" is better positioned to decide the issue. *Id.* (citing *Guzman,* 955 S.W.2d at 89). When the resolution of a question of law does not turn on an evaluation of the credibility and demeanor of a witness, then the trial court is not in a better position to make the determination, so appellate courts should conduct a de novo review of the issue. *Moff,* 154 S.W.3d at 601. The trial court's decision in this case was based only on the indictment, the motion to quash, and the argument of counsel. Thus, the trial court was in no better position than this Court to decide this issue, so I will conduct a de novo review of the trial court's ruling. *Id.*

### B. Sufficiency of an Indictment

As a general rule, a charging instrument that tracks the language of a criminal statute possesses sufficient specificity to provide a defendant with notice of a charged offense. *State v. Edmond,* 933 S.W.2d 120, 128 (Tex.Crim.App.1996) (en banc). The State need not allege facts that are merely evidentiary in nature. *Bynum v. State,* 767 S.W.2d 769, 778 (Tex.Crim.App. 1989) (en banc). An accused is entitled to notice of the acts or omissions the State alleges the accused committed. *Daniels v. State,* 754 S.W.2d 214, 217 (Tex.Crim.App. 1988) (en banc). A motion to quash should be granted only when the language concerning the defendant's conduct is so vague or indefinite as to deny him effective notice of the acts he allegedly committed. *DeVaughn v. State,* 749 S.W.2d 62, 67 (Tex.Crim.App.1988) (en banc). To survive a timely motion to quash, the indictment, on its face, must contain allegations of the facts necessary to show that the offense was committed, to bar subsequent prosecution for the same offense, and to give the defendant notice of the precise offense with which he is charged. *Id;* TEX.CODE CRIM. PROC. ANN. art. 21.03 (Vernon 1989). Upon review, we first determine if the notice given is sufficient. *Id.* If it is, our inquiry is ended; if not, the record must be examined to determine the impact of the deficiency on appellant's defense. *Id.; see also Hillin v. State,* 808 S.W.2d 486, 488 (Tex.Crim.App. 1991) (en banc). When construing an indictment, we read the indictment as a whole, applying practical, rather than technical considerations. *Oliver v. State,* 692 S.W.2d 712, 714 (Tex.Crim.App.1985) (en banc); *Dennis v. State,* 647 S.W.2d 275, 279 (Tex.Crim.App.1983) (en banc); *Soto v. State,* 623 S.W.2d 938, 939 (Tex.Crim.App. 1981); *Church v. State,* 552 S.W.2d 138, 140 (Tex.Crim.App.1977).

Subject to rare exceptions, an indictment that tracks the words of a statute is legally sufficient. *Lewis v. State,* 659 S.W.2d 429, 431 (Tex.Crim.App.1983) (en banc). However, when a statute provides more than one manner of committing a crime, the State must allege the particular statutory means of committing the offense. *See Ferguson v. State,* 622 S.W.2d 846, 851 (Tex.Crim.App.1981) (en banc) (finding defendant may not be left to guess whether State would seek to prove one or all types

of defined conduct). An indictment shall be deemed sufficient if it charges the commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged, and enable the court, on conviction, to pronounce the proper judgment. TEX.CODE CRIM. PROC. ANN. art. 21.11 (Vernon 1989). An indictment shall not be held insufficient, nor shall the trial, judgment or other proceedings thereon be affected, by reason of any defect of form which does not prejudice the substantial rights of the defendant. TEX.CODE CRIM. PROC. Ann. art. 21.19 (Vernon 1989).

### C. Disposition

In the motion to quash, Trevino complained that the State changed the elements of section 19.02(b)(2) by: (1) adding "to an individual, namely Michael Meza;" and, (2) omitting the word "and." The indictment alleged:

> ... MIGUEL TREVINO A/K/A MIKE TREVINO [defendant], on or about the 8TH day of JUNE, 2001, and anterior to the presentment of this indictment, in the County of Cameron and State of Texas, did then and there, with intent to cause serious bodily injury to an individual, namely, MICHAEL MEZA, commit an act clearly dangerous to human life, to-wit: by shooting MICHAEL MEZA with a firearm, that caused the death of said MICHAEL MEZA,
>
> AND THE GRAND JURORS AFORESAID, upon their Oaths in said Court, do further present that the defendant on or about the above mentioned date and anterior to the presentment of this Indictment, in the County of Cameron and State of Texas, did then and there intentionally or knowingly cause the death of an individual, namely, MICHAEL MEZA, by shooting MICHAEL MEZA with a firearm.

At the pretrial hearing, Trevino's counsel argued that the omission of "and" could lead the jury to conclude the State must prove either the element of "intent to cause serious bodily injury" or the element of "commits an act clearly dangerous to human life," but not both. The trial court held that everything in the clause was required and the addition of the word "and" was "basically for clarification and is not a substantive change." The trial court denied the motion to quash.

The notice provided by the indictment in question must be examined from the perspective of the accused in light of his constitutional presumption of innocence. *DeVaughn,* 749 S.W.2d at 68. Where a particular intent is a material fact in the description of the offense, it must be stated in the indictment. TEX.CODE CRIM. PROC. ANN. art. 21.05 (Vernon 1989). Here, Trevino had notice that the State was seeking a murder conviction in count one under either section 19.02(b)(1) or (2). *See* TEX. PEN.CODE ANN. § 19.02(b)(1), (2) (Vernon 2003). The indictment required the State to prove Trevino "intentionally and knowingly" caused the death of Meza under section 19.02(b)(1). *See* TEX. PEN.CODE ANN. § 19.02(b)(1) (Vernon 2003). The indictment required the State to prove Trevino had the intent "to cause seriously bodily injury" to Meza. Because the indictment adequately informed Trevino of the complained-of intent requirement, I conclude the indictment was sufficient.

Trevino complained to the trial court and asserts on appeal that without "and" in the indictment, the jury could convict him for murder under the standard of a reckless act codified as manslaughter. The indictment alleges that Trevino "did then

and there:" (1) with intent to cause serious bodily injury; (2) to Meza; (3) commit an act clearly dangerous to human life; (4) by shooting Meza with a firearm; (5) that caused Meza's death. The indictment tracks the language of the statute. TEX. PEN.CODE ANN. § 19.02(b)(2) (Vernon 2003). The indictment is sufficient. I conclude that the absence of "and" is not fatal. I conclude that count one of the indictment gave Trevino sufficient notice that he was charged with the murder of Meza. Further, the trial court's charge to the jury included the required culpable mental state:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 8th day of June, 2001 in Cameron County, Texas, the defendant, Miguel Trevino, aka Mike Trevino, did intentionally or knowingly cause the death of Michael Meza, by shooting him with a firearm or did then and there intend to cause serious bodily injury to the said Michael Meza and with said intent to cause such serious bodily injury did commit an act clearly dangerous to human life, to wit, by shooting the said Michael Meza, with a firearm, and did, in either event, thereby cause the death of said Michael Meza, as alleged in the indictment, then you will find the defendant guilty of murder.

The court's charge required the jury to find that Trevino intended to cause serious bodily injury to Meza and with such intent committed an act clearly dangerous to human life under penal code section 19.02(a)(2). No other culpable mental state was required. *See* TEX. PEN. CODE ANN. § 19.02(a)(2) (Vernon 2003); *Ortiz v. State*, 651 S.W.2d 764, 767 (Tex. Crim.App.1983) (en banc).

Accordingly, I concur with the majority's decision to overrule Trevino's second point of error.

## V. EVIDENCE OF GANG AFFILIATION

In his third point of error, Trevino asserts the trial court erred in admitting evidence of gang affiliation during the guilt-innocence phase of the trial, and that he was thereby harmed. The State counters that evidence of Trevino's membership in a known gang was admissible on two bases: (1) to demonstrate motive for the murder and aggravated assault; and (2) it was the *res gestae* of the murder itself.

Trevino complains that the trial court admitted evidence of gang affiliation through Serrato and the State's expert witness, Clemente Rodriguez. The State's theory was that Trevino opened fire into Serrato's vehicle because Trevino and Serrato were members of two competing sects of the same gang. Meza was Serrato's friend and a "victim who happened to be in the wrong place at the wrong time." Trevino counters that because Serrato testified that he knew of no reason why Trevino attacked him, evidence of gang affiliation was improper character evidence. Trevino adds that the expert's testimony was improper character evidence and, despite the lack of evidence of gang membership as a motive, the State proceeded to introduce the expert's testimony on prison gangs.

### A. Standard of Review

We review a trial court's admission or exclusion of evidence under an abuse-of-discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 379–80 (Tex.Crim. App.1990) (en banc) (op. on reh'g). The abuse-of-discretion standard applies to our review of a trial court's admission or exclusion of hearsay evidence. *See Cunningham v. State*, 877 S.W.2d 310, 313 (Tex. Crim.App.1994) (excluding admission against interest). An abuse of discretion

occurs when the trial court acts arbitrarily or unreasonably, without reference to guiding rules or principles. *Montgomery,* 810 S.W.2d at 380. In other words, an abuse of discretion occurs only when the trial court's decision is so wrong as to lie outside that zone within which reasonable persons might disagree. *Id.* A trial court has a "limited right to be wrong." Our inquiry on appeal is whether the result was reached in an arbitrary or capricious manner. *Id.* Therefore, we uphold a trial court's evidentiary ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Jones v. State,* 833 S.W.2d 118, 125 n. 15 (Tex.Crim.App.1992) (en banc); *State v. Ross,* 32 S.W.3d 853, 855–56 (Tex.Crim. App.2000) (en banc). We do not reverse a trial court's evidentiary ruling on a theory of admissibility or inadmissibility not raised at trial. *Martinez v. State,* 91 S.W.3d 331, 336 (Tex.Crim.App.2002).

### B. The Law Applicable to Evidentiary Rulings

To be admissible, evidence must be relevant. TEX.R. EVID. 402. Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX.R. EVID. 401. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, by considerations of undue delay, or needless presentation of cumulative evidence. TEX.R. EVID. 403; *Mozon v. State,* 991 S.W.2d 841, 846–47 (Tex.Crim.App.1999). In other words, rule 403 favors the admission of relevant evidence and carries the presumption that relevant evidence will be more probative than prejudicial. *Phelps v. State,* 5 S.W.3d 788, 795 (Tex.App.-San Antonio 1999, pet. ref'd). In reviewing the trial court's bal-

ancing of probative value with prejudice, we reverse the trial court's judgment "rarely and only after a clear abuse of discretion." *Id.* at 795 (citing *Montgomery,* 810 S.W.2d at 379).

Rule 404 generally prohibits the use of character evidence. *Montgomery,* 810 S.W.2d at 376–77. Nonetheless, evidence of "other crimes, wrongs, or acts" may be admissible if it has relevance apart from its tendency "to prove the character of a person in order to show that he acted in conformity therewith." TEX.R. EVID. 404(b); *see Montgomery,* 810 S.W.2d at 377. To preserve error over admission of extraneous-offense evidence, an accused first must object under rule 404(b) of the rules of evidence. TEX.R. EVID. 404(b); *Saldivar v. State,* 980 S.W.2d 475, 491 (Tex.App.-Houston [14th Dist.] 1998, pet. ref'd). The State then must show that the proffered evidence is relevant apart from its tendency to show that the accused is a criminal, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." TEX.R. EVID. 404(b); *Saldivar,* 980 S.W.2d at 491. At the accused's request, the trial court should then require the State to articulate the limited purpose for which the evidence is offered. *Saldivar,* 980 S.W.2d at 491. In considering the relevancy of the evidence, the trial court must determine, at the proffer of the evidence, that a jury reasonably could find beyond a reasonable doubt that the accused committed the extraneous offense. *Saldivar,* 980 S.W.2d at 491. If the trial court determines that the extraneous-conduct evidence is relevant, the accused then must object under rule 403 and obtain a ruling as to whether the probative value of the evidence is substantially outweighed by its prejudicial effect. *See* TEX.R. EVID. 403. Accordingly, an objection under rule 404(b) alone does not preserve error as to the admission of evidence of an

extraneous offense. Objection under rule 403 also is required. *Id.* Further, when extraneous conduct is admitted in the culpability phase of a trial without a limiting instruction at the time of admission, it may result in the jury drawing an impermissible inference about the accused's guilt based on character conformity. *See Hammock v. State,* 46 S.W.3d 889, 894 (Tex. Crim.App.2001). The danger then becomes that a later instruction in the jury charge cannot erase the improper inference. *Id.* Therefore, in the absence of a timely motion for a limiting instruction at the time the evidence is offered, the evidence is admitted for all purposes. *See id.*

## C. Evidentiary Objection

Trevino's rule 404(b) objection to evidence of gang affiliation sufficiently apprised the trial court of the nature of his complaint. *See* TEX.R.APP. P. 33.1(a)(1)(A). However, Trevino did not object under rule 403 and obtain a ruling as to whether the probative value of the evidence was substantially outweighed by its prejudicial effect. *See* TEX.R. EVID. 403. Nor did he ask for a limiting instruction during the culpability phase of the trial. *See* TEX.R. EVID. 105(a); *see also Hammock,* 46 S.W.3d at 894. I agree with the majority that, at trial, Trevino did not preserve error on any complaint over admission of evidence of gang affiliation. ·

Even assuming that Trevino did not forfeit his complaint of error, I conclude that the trial court did not abuse its discretion in admitting evidence of gang affiliation. As previously stated, under rule 404(b), evidence of other crimes, wrongs, or acts is not admissible to prove a person's character and/or to show that the person acted in conformity with that character. · *See* TEX.R. EVID. 404(b). However, such evidence may be admitted if it is relevant to motive, identity, intent, opportunity, preparation, plan or absence of mistake. *Id.* As the Texas Court of Criminal Appeals

has explained, "It has long been the rule in this State that the jury is entitled to know all relevant surrounding facts and circumstances of the charged offense; an offense is not tried in a vacuum." *Moreno v. State,* 721 S.W.2d 295, 301 (Tex.Crim.App. 1986) (en banc) (citing *Archer v. State,* 607 S.W.2d 539, 542 (Tex.Crim.App.1980)). Thus, gang membership evidence is admissible under Texas Rule of Evidence 404(b) (and rule 402) if it is relevant to show a noncharacter purpose that in turn tends to show commission of the crime. *Ortiz v. State,* 93 S.W.3d 79, 94 (Tex.Crim.App. 2002) (en banc); *Tibbs v. State,* 125 S.W.3d 84, 89 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd); *see Vasquez v. State,* 67 S.W.3d 229, 240 (Tex.Crim.App.2002); *Martinez v. State,* 98 S.W.3d 189, 193 (Tex.Crim.App. 2003); *Beasley v. State,* 902 S.W.2d 452, 456–57 (Tex.Crim.App.1995) (en banc); *Bradford v. State,* 178 S.W.3d 875, 879 (Tex.App.-Fort Worth 2005, no pet.); *Chimney v. State,* 6 S.W.3d 681, 699 (Tex. App.-Waco 1999, pet. ref'd). Further, while evidence may be admissible under rule 404, the trial court may exercise its discretion to exclude the evidence under rule 403 if it determines that the probative value is substantially outweighed by the danger of unfair prejudice. TEX.R. EVID. 403; *Mozon,* 991 S.W.2d at 846.

## D. Disposition

The State's theory was that Trevino intentionally opened fire at Serrato's vehicle because Serrato was a member of a rival sect in the same gang. Thus, the gang affiliation evidence was relevant evidence of motive to show an intent to kill, and is permissible under rule 404(b). *See Vasquez,* 67 S.W.3d at 239 ("As for Rules 401, 402, and 404, we hold that gang-affiliation is relevant to show a motive for a gang-related crime."); *Medina v. State,* 7 S.W.3d 633, 644 (Tex.Crim.App.1999) (stating that evidence of gang affiliation "was

most relevant as to appellant's motive and intent on the night of the offense"); *Williams v. State,* 974 S.W.2d 324, 331 (Tex.App.-San Antonio 1998, pet. ref'd) (holding evidence of gang affiliation admissible under rule 404(b) to show motive). Because Trevino's affiliation with the rival "new wavers" was relevant to show the motive for the shooting, rather than mere conformity with character, the trial court did not abuse its discretion by allowing the testimony. *Montgomery,* 810 S.W.2d at 379–80.

### E. Harm Analysis

Even assuming that the trial court abused its discretion in admitting evidence of gang affiliation during the guilt-innocence phase of the trial, Trevino is not entitled to reversal unless he shows the error was: (1) of constitutional magnitude; or (2) affected a substantial right. *See* TEX.R.APP. P. 44.2(a), (b). A violation of rules of evidence that results in erroneous admission of evidence is non-constitutional error. *Couchman v. State,* 3 S.W.3d 155, 160 (Tex.App.-Fort Worth 1999, pet. ref'd). A harm analysis under rule 44.2(a) imposes a more stringent standard than rule 44.2(b). *Guidry v. State,* 9 S.W.3d 133, 151 n. 14 (Tex.Crim.App.1999). Under rule 44.2(a), if the appellate record in a criminal case reveals constitutional error subject to harmless-error review, we must reverse a judgment of conviction or punishment unless we determine beyond a reasonable doubt the error did not contribute to the conviction or punishment. TEX. R.APP. P. 44.2(a); *Wesbrook v. State,* 29 S.W.3d 103, 119 (Tex.Crim.App.2000) (en banc); *Aguirre–Mata v. State,* 992 S.W.2d 495, 498 (Tex.Crim.App.1999). In making a harmless-error determination under rule 44.2(a), we do not focus on the weight of other evidence of guilt. Rather, we determine whether the error might have prejudiced a juror's decision-making process. *Montgomery v. State,* 821 S.W.2d 314, 317

(Tex.App.-Dallas 1991, pet. ref'd) (citing *Harris v. State,* 790 S.W.2d 568, 587 (Tex. Crim.App.1989) (en banc)).

In performing a harmless-error analysis under rule 44.2(a), we isolate the effect of the error and determine how much weight a juror would probably place on the error. *Harris,* 790 S.W.2d at 587. If the error was of such a magnitude that in reasonable probability it disrupted the jury's orderly evaluation of all the evidence, no matter how overwhelming other evidence of guilt might have been, then the conviction must be reversed. *Id.* at 588. Unless the overwhelming evidence dissipates the error's effect on the jury's function in determining the facts, so that it did not contribute to the verdict, the error is harmful. *Id.* at 587. We ask if a reasonable probability exists that the evidence, either alone or in context, moved the jury from a state of nonpersuasion to one of persuasion beyond a reasonable doubt. *Wesbrook,* 29 S.W.3d at 119; *Cardenas v. State,* 971 S.W.2d 645, 651 (Tex.App.-Dallas 1998, pet. ref'd). If so, the error is harmful. *Wesbrook,* 29 S.W.3d at 119.

Whether the evidence is sufficient to convict without the inadmissible evidence is not the sole determinant in a rule 44.2(a) harm analysis. *See Cardenas,* 971 S.W.2d at 651. Rather, we assess whether a reasonable probability exists that the erroneously admitted evidence contributed to the jury's verdict. *Id.* Thus, we must calculate as closely as possible the probable impact of the error on the jury in the context of the other evidence introduced at trial. *Harris,* 790 S.W.2d at 587. In making this determination, *Harris* directs us to examine six factors: (1) the source of the error; (2) the nature of the error; (3) whether and to what extent the State emphasized the error; (4) any collateral implications of the error; (5) the weight a juror would probably place on the error;

and (6) whether declaring the error harmless would encourage the State to repeat it with impunity. *Id.; Mosley v. State,* 960 S.W.2d 200, 204–05 (Tex.App.-Corpus Christi 1997, no pet.). We are "obligated to examine the entire record in a neutral, impartial and even-handed manner and not 'in the light most favorable to the prosecution.'" *Harris,* 790 S.W.2d at 586.

In this case, the source and nature of the error, if any, was the trial court's admission of evidence of Trevino's gang affiliation. The State did emphasize gang affiliation. However, while other evidence of guilt is not a sole determinant, any collateral implications of admitting the evidence and the amount of weight the jury placed on the evidence were minimal because the jury heard other substantial evidence related to Trevino's conduct. The jury also heard Serrato testify that he was a member of the same gang and that Trevino was part of the group (the "new wavers") who wanted to rid the gang of the older members. According to Serrato, Meza was a prospect. I cannot conclude that it is likely that the State will repeat this type of error, if any, with impunity. *See id.*

The most significant concern in a rule 44.2(a) harm analysis is the effect of any erroneously admitted evidence on the integrity of the trial process. *Id.* While not determinative of the harm question, the presence of overwhelming evidence supporting a jury's finding of guilt is a factor in the evaluation of harmless error under rule 44.2(a). *Id.* The unchallenged evidence in this case permitted the jury to find all· of the elements of the charged offenses. This evidence was not contradicted. Given this evidence, the jury was clearly not equally balanced on the issue of guilt or innocence. Indeed, nothing suggests the jury would have returned a different verdict "but for" admission of Trevino's gang affiliation. *Tibbs,* 125 S.W.3d at 96. I conclude Trevino was not harmed by the admission of gang affiliation during the guilt-innocence phase of the trial.

Accordingly, I concur with the majority's decision to overrule Trevino's third point of error.

## VI.  SUFFICIENCY OF THE EVIDENCE–MURDER

I construe Trevino's brief liberally and conclude he raises both legal and factual sufficiency challenges. *See* TEX.R.APP. P. 38.9. In his fourth point of error, Trevino essentially challenges the sufficiency of the evidence to convict him of (1) the murder of Meza, and (2) the aggravated assault of Serrato. In particular, Trevino asserts that there is no evidence that he knowingly and intentionally committed murder and, because the charge did not contain an instruction regarding transferred intent, the hypothetically correct jury charge analysis is not applicable. Regarding the aggravated assault charge in the indictment, Trevino argues that the evidence is insufficient to prove the offense. He also argues that the evidence of identification is insufficient. The State counters that the hypothetically correct jury charge would have included the doctrine of transferred intent and the evidence is sufficient to convict Trevino of murder. The State also responds that evidence is sufficient to support the aggravated assault conviction.

### A.  Standards of Review

#### 1.  Legal Sufficiency

A legal-sufficiency challenge calls on us to review the relevant evidence in the light most favorable to the verdict. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Escamilla v. State,* 143 S.W.3d 814, 817 (Tex.Crim.App.2004); *Swearingen v. State,* 101 S.W.3d 89, 95 (Tex.Crim.App.2003) (en banc); *Johnson v.*

*State,* 23 S.W.3d 1, 7 (Tex.Crim.App.2000) (en banc). We consider all the evidence that sustains the conviction, whether properly or improperly admitted. *Conner v. State,* 67 S.W.3d 192, 197 (Tex.Crim.App. 2001) (citing *Garcia v. State,* 919 S.W.2d 370, 378 (Tex.Crim.App.1994) (en banc)). Similarly, we consider all the evidence that sustains the conviction, whether submitted by the prosecution or the defense, in determining the legal sufficiency of the evidence. *Cook v. State,* 858 S.W.2d 467, 470 (Tex.Crim.App.1993) (en banc); *King v. State,* 29 S.W.3d 556, 562 (Tex.Crim.App. 2000) (en banc). In this review, we do not reevaluate the weight and credibility of the evidence, but rather, act only to ensure that the jury reached a rational decision. *Muniz v. State,* 851 S.W.2d 238, 246 (Tex. Crim.App.1993) (en banc).

The legal sufficiency of the evidence is measured against the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App. 1997); *Swartz v. State,* 61 S.W.3d 781, 786 (Tex.App.-Corpus Christi 2001, pet. ref'd). This standard of legal sufficiency ensures that a judgment of acquittal is reserved for those situations in which there is an actual failure in the State's proof of the crime rather than a mere error in the jury charge submitted. *Malik,* 953 S.W.2d at 240. We then determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781; *Johnson,* 23 S.W.3d at 7.

If we reverse a criminal case for legal insufficiency, we reform the judgment of conviction to reflect conviction for a lesser offense only if a jury charge on the lesser offense was either submitted or requested but denied. *Collier v. State,* 999 S.W.2d 779, 782 (Tex.Crim.App.1999). Otherwise, we vacate the judgment of conviction for legal insufficiency and order a judgment of acquittal. *Swearingen,* 101 S.W.3d at 95.

### 2. *Factual Sufficiency*

We are constitutionally empowered to review the judgment of the trial court to determine the factual sufficiency of the evidence used to establish the elements of the offense with which Trevino was charged. The Texas Court of Criminal Appeals has restated the factual sufficiency standard of review:

> There is only one question to be answered in a factual sufficiency review: Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt? However, there are two ways in which the evidence may be insufficient. First, when considered by itself, evidence supporting the verdict may be too weak to support the finding of guilt beyond a reasonable doubt. Second, there may be both evidence supporting the verdict and evidence contrary to the verdict. Weighing all the evidence under this balancing scale, the contrary evidence may be strong enough that the beyond-a-reasonable-doubt standard could not have been met, so the guilty verdict should not stand. This standard acknowledges that evidence of guilt can 'preponderate' in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt. Stated another way, evidence supporting guilt can 'outweigh' the contrary proof and still be factually insufficient under a beyond-a-reasonable-doubt standard.

*Zuniga v. State,* 144 S.W.3d 477, 484–85 (Tex.Crim.App.2004). A clearly wrong and unjust verdict occurs where the jury's finding is "manifestly unjust," "shocks the conscience," or "clearly demonstrates bias." *Prible v. State,* 175 S.W.3d 724, 731 (Tex.Crim.App.2005).

When the State bears the burden of proof, the proof of guilt is factually insufficient if it is so obviously weak as to indicate that a manifest injustice has occurred or if it is greatly outweighed by contrary proof. *Zuliani v. State*, 97 S.W.3d 589, 593–94 (Tex.Crim.App.2003). In determining the factual sufficiency of the elements of the offense, we view all the evidence neutrally, not through the prism of "the light most favorable to the prosecution." *Johnson*, 23 S.W.3d at 6–7 (citing *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996)).

In conducting a factual-sufficiency review, we review the evidence weighed by the jury that tends to prove a material disputed fact and compare it with evidence that tends to support disprove it. *Johnson*, 23 S.W.3d at 7. We are authorized to disagree with the fact finder's determination. *Id.* However, we approach a factual sufficiency review with appropriate deference to avoid substituting our judgment for that of the fact finder. *Id.* Our evaluation should not intrude substantially on the fact finder's role as the sole judge of the weight and credibility given to witness testimony. *Id.*

We always remain aware of the fact finder's role and unique position, a position we are unable to occupy. *Id.* at 9. Exercise of our authority to disagree with the fact finder's determination is appropriate only when the record clearly indicates our intervention is necessary to stop manifest injustice. *Id.*

Every fact need not point directly and independently to the accused's guilt. *Vanderbilt v. State*, 629 S.W.2d 709, 716 (Tex. Crim.App.1981). A conclusion of guilt can rest on the combined and cumulative force of all the incriminating circumstances. *Id.* We reverse a judgment of conviction only if proof of guilt is so obviously weak and manifestly unjust or the contrary evidence is so strong that the standard of proof

beyond a reasonable doubt could not have been met. *Prible*, 175 S.W.3d at 731.

In conducting a factual sufficiency review, we review all the evidence. *Cain v. State*, 958 S.W.2d 404, 408 (Tex.Crim.App. 1997). In the opinion, we "show our work" when we consider and address the appellant's main argument for urging insufficiency of the evidence. TEX.R.APP. P. 47.1; *Sims*, 99 S.W.3d at 604 ("A proper factual sufficiency review must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal."). This practice benefits the parties, maintains the integrity of the justice system, and improves appellate practice. *Sims*, 99 S.W.3d at 603.

If we reverse a criminal case for factual insufficiency, we vacate the judgment of conviction. *Clewis*, 922 S.W.2d at 133–34. We remand for a new trial a criminal case reversed for factual insufficiency so a second jury has the chance to evaluate the evidence. *Swearingen*, 101 S.W.3d at 97.

## B. The Law Applicable to the Sufficiency Analysis for Murder

### 1. The Hypothetically Correct Charge

A hypothetically correct charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict its theories of liability, and adequately describes the particular offense proof. *Malik*, 953 S.W.2d at 240; *Cano v. State*, 3 S.W.3d 99, 105 (Tex.App.-Corpus Christi 1999, pet. ref'd). A hypothetically correct jury charge would not simply quote from the controlling statute. *Gollihar v. State*, 46 S.W.3d 243, 254 (Tex.Crim.App. 2001). Its scope is limited by the statutory elements of the offense as modified by the charging instrument. *See Curry v. State*, 30 S.W.3d 394, 404 (Tex.Crim.App. 2000). *Malik* flatly rejects use of the jury

charge actually given as a means of measuring sufficiency of the evidence. *See Gollihar v. State,* 46 S.W.3d 243, 252 (Tex. Crim.App.2001). *Malik* controls sufficiency of the evidence analysis even in the absence of alleged jury charge error. *Id.* at 255.[9] A hypothetically correct jury charge would include the doctrine of transferred intent.[10] *See Manrique v. State,* 994 S.W.2d 640, 647–48 (Tex.Crim.App. 1999) (en banc); *Swartz v. State,* 61 S.W.3d at 786.

## 2. The Elements of Murder Under Penal Code § 19.02(b)(2)— Transferred Intent

Murder is a "result of conduct" offense. *Cook v. State,* 884 S.W.2d 485, 490 (Tex. Crim.App.1994) (en banc). A person commits the offense of murder if he intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX. PEN.CODE ANN. § 19.02(b)(2) (Vernon 2003). A person acts intentionally or knowingly with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. TEX. PEN.CODE ANN. § 6.03(a), (b) (Vernon 2003) (defining culpable mental states of intentionally and knowingly); *Castillo v. State,* 71 S.W.3d 812, 817 (Tex. App.-Amarillo 2002, pet. ref'd). Further, a person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that: (1) a different offense was commit-

ted; or (2) a different person or property was injured, harmed, or otherwise affected. TEX. PEN.CODE ANN. § 6.04(b)(2) (Vernon 2003). Under the statute, a defendant can be held "criminally responsible," that is, guilty for the death of another even if he did not intend to harm the victim so long as he caused the actual victim's death while acting with the intent to kill a different person. *Chimney,* 6 S.W.3d at 700. Thus, criminal responsibility via transferred intent is an issue to be determined during the guilt-innocence phase. *Id.* In that regard, all the State need prove is that the only difference between what actually occurred and what the accused intended or knew would occur is that he caused the death of someone other than the one he tried to kill. *Castillo,* 71 S.W.3d at 817. Trevino asserts that the evidence shows Meza's death was accidental and not intentional.

## 3. The Elements of Murder Under Penal Code § 19.02(b)(1)— Specific Intent

We must decide whether a rational trier of fact could have found beyond a reasonable doubt that Trevino (1) intentionally or knowingly caused the death of Meza, or (2) intended to cause serious bodily injury and committed an act clearly dangerous to human life that caused the death of Meza. TEX. PEN.CODE ANN. § 19.02(b)(1), (2) (Vernon 2003). A person acts intentionally with respect to the result of his conduct when it is his conscious objective or desire

---

**9.** Although *Malik* involved a challenge to the legal sufficiency of the evidence, I discern nothing in the opinion that limits its holding to that category of sufficiency challenges. *Malik v. State,* 953 S.W.2d 234, 240 (Tex. Crim.App.1997); *see also Reaves v. State,* 970 S.W.2d 111, 116 (Tex.App.-Dallas 1998, no pet.). This Court measures the factual sufficiency of the evidence against a hypothetically correct jury charge. *Adi v. State,* 94 S.W.3d

124, 131 (Tex.App.-Corpus Christi 2002, pet. ref'd).

**10.** This statutory principle of "transferred intent" is raised when there is evidence a defendant with the required culpable mental state intends to injure or harm a specific person but injures or harms a different person or both. *Manrique v. State,* 994 S.W.2d 640, 647 (Tex.Crim.App.1999) (en banc) (J. McCormick, concurring).

to cause the result. TEX. PEN.CODE ANN. § 6.03(a) (Vernon 2003). A person acts knowingly with respect to the result of his conduct when he is aware his conduct is reasonably certain to cause the result. *Id.* at § 6.03(b) (Vernon 2003). When a general verdict is returned and the evidence is sufficient to support a finding under any of the paragraphs submitted, the verdict will be applied to the paragraph finding support in the facts. *Amis v. State,* 87 S.W.3d 582, 587 (Tex.App.-San Antonio 2002, pet. ref'd) (citing *Manrique,* 994 S.W.2d at 642).

Trevino challenges the sufficiency of the evidence to prove the requisite culpable mental state for murder. As is almost always the case, Trevino's intent must be established by circumstantial evidence. *See Dillon v. State,* 574 S.W.2d 92, 94 (Tex.Crim.App. [Panel Op.] 1978). The jury may infer the requisite intent from any facts which tend to prove its existence, including the acts, words, and conduct of the accused, the method of committing the crime, and the nature of the wounds inflicted on the victims. *Manrique,* 994 S.W.2d at 649 (J. Meyers, concurring); *see Conner,* 67 S.W.3d at 197. If a deadly weapon is used in a deadly manner, the inference is almost conclusive that the defendant intended to kill. *Adanandus v. State,* 866 S.W.2d 210, 215 (Tex.Crim.App. 1993); *see Bell v. State,* 501 S.W.2d 137, 138 (Tex.Crim.App.1973); *Guerrero v. State,* 655 S.W.2d 291, 292 (Tex.App.-Corpus Christi 1983, no writ). In fact, where a deadly weapon is fired at close range and death results, the law presumes an intent to kill. *Womble v. State,* 618 S.W.2d 59, 64 (Tex.Crim.App.1981).

### C. Analysis

#### 1. Penal Code § 19.02(b)(1)

While stopped at an intersection while driving, Serrato saw Trevino approach in another vehicle. Serrato identified Trevino as the shooter. Four shots shattered the driver-side window of Serrato's vehicle and one pierced the driver-side door. Serrato sustained bullet wounds to his face and arm. Meza sustained bullet wounds to his upper left torso resulting in his death. Trevino continued to shoot at Serrato's vehicle while in pursuit. A rear tire of Serrato's vehicle blew out. The vehicle also sustained a bullet hole near the rear license plate.

From the evidence that Trevino shot five times at the driver side of Serrato's vehicle, the jury could conclude beyond a reasonable doubt that Trevino caused the death of Meza, although he intended to cause the death of Serrato, under a transferred intent theory. A rational jury could have reasonably inferred that Trevino intended to shoot and kill Serrato, saw him in the car, fired, and instead killed Meza. A rational jury, however, could also conclude beyond a reasonable doubt that, by shooting at the vehicle, both while beside it and in pursuit, Trevino intended to cause the deaths of the vehicle's occupants, Serrato and Meza. The jury could reasonably infer Trevino's specific intent to kill when he used a deadly weapon to repeatedly shoot at an occupied vehicle. *See Adanandus,* 866 S.W.2d at 215. Thus, a jury could have found beyond a reasonable doubt that Trevino intentionally and knowingly caused the death of Meza by shooting him with a gun. I conclude the evidence was legally sufficient to sustain the murder conviction. *See Sanders v. State,* 119 S.W.3d 818, 820 (Tex.Crim.App.2003). Viewed in the light most favorable to the verdict, I conclude that the evidence is legally sufficient to support the murder conviction, both under a transferred intent theory applying *Malik* and under a specific intent theory applying *Manrique.* *See Malik,* 953 S.W.2d at 240; *Manrique,* 994 S.W.2d at 649.

That the evidence of guilt was not free of contradiction and that the credibility of witnesses may have been subject to question does not require us to conclude that the verdict was factually insupportable. *See Zuliani*, 97 S.W.3d at 593–94. Those circumstances merely create issues for the jury to resolve. *Id.* The jury is the exclusive judge of the credibility of the witnesses and of the weight to be given their testimony. TEX.CODE CRIM. PROC. ANN. art. 36.13 (Vernon 1981); TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979). We will not reverse unless (1) the evidence of Trevino's guilt, taken alone, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) the contrary evidence is so strong that the standard of proof beyond a reasonable doubt could not have been met. *Zuniga*, 144 S.W.3d at 484–85. Viewing the relevant evidence in a neutral light, favoring neither the prosecution nor the defense, and with appropriate deference to the jury's credibility determinations, I conclude that the evidence supporting the verdict is not too weak to support the jury's finding of guilt beyond a reasonable doubt. Nor is the weight of the evidence contrary to the verdict strong enough that the State could not have met its burden of proof. *Id.* I conclude that the evidence is factually sufficient to support Trevino's conviction. I respectfully disagree with Trevino's argument that the absence of transferred intent in the jury charge precluded a finding of criminal responsibility for murder. The *Malik* court itself anticipated the review of theories that were raised by the evidence, but not charged in the jury charge, or even in the indictment, where such theories are permitted by law and authorized by the indictment. *Manrique*, 994 S.W.2d at 647–48; *Swartz*, 61 S.W.3d at 786. When the indictment alleges alternate theories of committing the same offense, it is proper for the jury to be charged in the disjunctive and to return a general verdict of guilty. TEX.CODE CRIM. PROC. ANN. art. 37.07, § 1(a) (Vernon Supp.2005) (verdict must be general); *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex.Crim.App.1991) (en banc). The conviction will be upheld if the evidence is sufficient to support a finding of guilt under any one of the theories submitted. *Kitchens*, 823 S.W.2d at 258; *see Aguirre v. State*, 732 S.W.2d 320, 326 (Tex.Crim. App.1987) (en banc); *Yandell v. State*, 46 S.W.3d 357, 363 (Tex.App.-Austin 2001, pet. ref'd).

The jury returned a general verdict. I have concluded that the evidence is sufficient to support a finding under section § 19.02(b)(1). *See* Tex. Pen.Code Ann. § 19.02(b)(1) (Vernon 2003). Thus, the verdict will be applied to the paragraph finding support in the facts. *Amis*, 87 S.W.3d at 587.

Even so, the evidence is legally and factually sufficient to support Trevino's conviction under the State's alternate theory. I turn to the State's alternate theory. *Kitchens*, 823 S.W.2d at 258.

### 2. Penal Code § 19.02(b)(2)

A person commits the offense of murder under § 19.02(b)(2) if he intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX. PEN.CODE ANN. § 19.02(b)(2) (Vernon 2003). The elements of murder under this section are that the person (1) intends to cause serious bodily injury, (2) commits an act clearly dangerous to human life, (3) that causes the death of an individual. *See id.* "Serious bodily injury" is bodily injury that creates a substantial risk of death or causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any "bodily member or organ." TEX. PEN.CODE ANN. § 1.07(a)(46) (Vernon Supp.2004–05); *Fer-*

*rel v. State*, 55 S.W.3d 586, 589 (Tex.Crim. App.2001). The State bears the burden of showing that an assault caused serious bodily injury. *Moore v. State*, 739 S.W.2d 347, 352 (Tex.Crim.App.1987) (en banc).

In a prosecution under section 19.02(b)(2), an intent to kill is not required. TEX. PEN.CODE ANN. § 19.02(b)(2) (Vernon 2003); *Ortiz*, 651 S.W.2d at 767 (citing *Garcia v. State*, 541 S.W.2d 428, 430 (Tex.Crim.App.1976)); *see also Fazzino v. State*, 531 S.W.2d 818 (Tex.Crim.App. 1976), *overruled on other grounds, Dockery v. State*, 542 S.W.2d 644, 650 (Tex. Crim.App.1975). It is sufficient to show only the intent to cause serious bodily injury. *Garcia*, 541 S.W.2d at 430. Murder under section 19.02(a)(2) is a "result" type of a crime. *Lugo–Lugo v. State*, 650 S.W.2d 72, 81 (Tex.Crim.App.1983) (en banc). Since an act that was intended to cause serious bodily injury may not have been intended to be clearly dangerous to human life, the statute requires that the character of the act be measured by an objective standard. *Id.* By authorizing a conviction for murder by intending to cause death by an act, regardless of its magnitude, or by intending to cause serious bodily injury, by an act clearly dangerous to human life, the legislature has determined that § 19.02(b)(1) and (b)(2) are functionally equivalent. *Id.* A jury may infer intent from the acts and words of the defendant, the manner in which the offense was committed, the nature of the wounds inflicted, and the relative size and strength of the parties. *Nickerson v. State*, 69 S.W.3d 661, 667 (Tex.App.-Waco 2002, pet. ref'd) (citing *Patrick v. State*, 906 S.W.2d 481, 487 (Tex.Crim.App.1995) (en banc); *West v. State*, 846 S.W.2d 912, 914 (Tex. App.-Beaumont 1993, pet. ref'd)).

Based on the allegations of the indictment, the central issue is whether Trevino intended to cause serious bodily injury to Meza when he shot at Serrato's vehicle. The jury, as sole trier of the facts, could infer the intent to cause serious bodily injury from the use of a deadly weapon. *Lugo–Lugo*, 650 S.W.2d at 81; *see also Adanandus*, 866 S.W.2d at 215. "Deadly weapon" is defined as anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. TEX. PEN.CODE ANN. § 1.07(a)(17)(B) (Vernon Supp.2005); *Ferrel*, 55 S.W.3d at 589. A "firearm" is a deadly weapon per se. *Stewart v. State*, 532 S.W.2d 349, 350 (Tex.Crim.App.1976). The commission of an act clearly dangerous to human life suffices to support a conviction for murder under section 19.02(b)(2) of the Texas Penal Code and is not an accidental or reckless act. *See* TEX. PEN.CODE ANN. § 19.02(b)(2); *Martinez v. State*, 16 S.W.3d 845, 848 (Tex. App.-Houston (1st Dist.) 2000, pet. ref'd).

Viewed both under the *Jackson* and *Zuniga* standards, the evidence showed Trevino intentionally and knowingly fired at Serrato's vehicle. *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781; *Zuniga*, 144 S.W.3d at 484–85. Firing a weapon into an occupied vehicle is, by the nature of the conduct, reasonably certain to result in death. *See Medina*, 7 S.W.3d at 640. Trevino continued to shoot while in pursuit of the occupied vehicle. I conclude the evidence was legally sufficient to support the conviction under section 19.02(b)(2). I further conclude that the evidence supporting the verdict is not too weak for a jury to find guilt beyond a reasonable doubt, nor is the weight of the contrary evidence strong enough that the State could not have met its burden of proof. I conclude the evidence was factually sufficient.

Thus, the transferred intent theory is not the only theory for which there is sufficient evidence to support Trevino's murder conviction. The evidence is legally

and factually sufficient to support the conviction applying the proper standards of review. I now turn to that part of Trevino's fourth point of error asserting insufficiency of the evidence to sustain the aggravated assault conviction.

## VII. SUFFICIENCY OF THE EVIDENCE—AGGRAVATED ASSAULT

### A. Hypothetically Correct Jury Charge for Aggravated Assault

#### 1. Elements of Aggravated Assault

A person commits assault by intentionally, knowingly, or recklessly causing bodily injury to another, including the person's spouse. TEX. PEN.CODE ANN. § 22.01(a)(1) (Vernon Supp.2005). The elements of aggravated assault are that a person commit assault and either: (1) cause serious bodily injury to another; or (2) use or exhibit a deadly weapon during the commission of the assault. *Id.* at § 22.02(a) (Vernon Supp.2005); *Ferrel,* 55 S.W.3d at 589.

#### 2. Definitions of Terms in the Assault Statute

"Bodily injury" means physical pain, illness, or any impairment of physical condition. TEX. PEN.CODE ANN. § 1.07(a)(8) (Vernon Supp.2005); *Nelson v. State,* 612 S.W.2d 605, 607 (Tex.Crim.App. [Panel Op.] 1981). "Serious bodily injury" is bodily injury that creates a substantial risk of death or causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any "bodily member or organ." TEX. PEN.CODE ANN. § 1.07(a)(46) (Vernon Supp.2004–05); *Ferrel,* 55 S.W.3d at 589. The State bears the burden of showing that an assault caused serious bodily injury. *Moore,* 739 S.W.2d at 352. To show protracted loss of a "bodily member or organ," the State must show that the injuries were "either continuing, dragged out, drawn out,

elongated, extended, lengthened, lengthy, lingering, long, long-continued, long-drawn, never-ending, ongoing, prolix, prolonged, or unending." *Id.*

"Deadly weapon" is defined as anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. TEX. PEN.CODE ANN. § 1.07(a)(17)(B) (Vernon Supp.2005); *Ferrel,* 55 S.W.3d at 589. An object may be a deadly weapon by its manner of use. *See Adame v. State,* 69 S.W.3d 581, 584 (Tex. Crim.App.2002) (Meyers, J., concurring). If an actor uses or intends to use an object in such a way that the object is capable of causing death or serious bodily injury, it is a deadly weapon. *Id.* In determining whether an object is a "deadly weapon," a jury may consider (1) the physical proximity between the alleged victim and the object, (2) any threats or words used by the accused, (3) the size and shape of the object, (4) the potential of the object to inflict death or serious injury, and (5) the manner in which the accused allegedly used the object. *Id.* No one factor is determinative. *Id.* Each case must be examined on its own facts. *Id.* Finally, the use of a deadly weapon during the commission of an assault does not create an inference of serious bodily injury. *Moore,* 739 S.W.2d at 352.

#### 3. Identity

Trevino complains that the evidence was legally and factually insufficient to prove the element of identity, stating that the only person placing him at the scene was Carol Cruz. Where identity is an issue in the case, the identity of the perpetrator may be proved by direct or circumstantial evidence. *Earls v. State,* 707 S.W.2d 82, 85 (Tex.Crim.App.1986) (en banc). In our sufficiency review, we are governed by the fact that the jury is the exclusive judge of the facts proved, the credibility of the wit-

nesses, and the weight to be given to the testimony. TEX.CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Earls,* 707 S.W.2d at 85. The jury may believe or disbelieve all or any part of a witness's testimony, even though the witness's testimony has been contradicted. *Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App. 1986). Reconciliation of conflicts in the evidence is within the exclusive providence of the jury. *Jones v. State,* 944 S.W.2d 642, 647 (Tex.Crim.App.1996).

### B.  Analysis

#### 1.  Aggravated Assault

Serrato testified that Trevino shot him. Serrato sustained five wounds: two shots on his left arm, one on his lip, one on his chest, and one on his right arm. When bullets struck, Serrato felt like he was drowning and could not move his left arm. Serrato saw a bone protruding from his arm. He drove away from the scene "running for [his] life." Serrato testified that his lip was "blown off." He underwent surgery for his injuries. At the time of trial, Serrato testified he was disabled.

A hypothetically correct jury charge would instruct the jury to find Trevino guilty of aggravated assault of Serrato if it found that Trevino used or exhibited the semiautomatic gun as a deadly weapon. *See* TEX. PEN.CODE ANN. § 22.02(a) (Vernon Supp.2005); *see also Ferrel,* 55 S.W.3d at 589; *Malik,* 953 S.W.2d at 240.

#### 2.  Identity

The evidence showed that an eyewitness to the shooting, Carol Cruz, was not able to identify Trevino from a photo lineup a few days after the shooting. At the trial, Cruz identified Trevino as the shooter. Serrato testified that Trevino was the shooter. Serrato identified Trevino to law enforcement immediately after the offense. The evidence at trial showed that Trevino, not anyone else, was the shooter. Consid-

ering all the evidence that sustains the conviction in the light most favorable to the verdict, measured by the hypothetically correct·jury charge for aggravated assault, I find that a rational trier of fact could have found beyond a reasonable doubt that Trevino was the shooter. *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781. Viewed in a neutral light and with appropriate deference to the jury's credibility determinations, I conclude that the evidence supporting Trevino as the shooter is not too weak to support the jury's finding of guilt beyond a reasonable doubt. *See Zuniga,* 144 S.W.3d at 484–85; *see Earls,* 707 S.W.2d at 85. Further, the weight of the evidence contrary to the verdict is not such that the State could not have met its burden of proof at trial. *See Zuniga,* 144 S.W.3d at 484–85.

#### 3.  Disposition

The jury could have inferred that Trevino's use of the semiautomatic gun was capable of causing Serrato's death or serious bodily. The jury could have found beyond a reasonable doubt that Trevino used a deadly weapon to assault Serrato. Regarding identity, the jury was free to accept or reject the evidence before it. The jury was the sole judge of the credibility of the witnesses. The jury resolved the issues before it and concluded Trevino was the shooter.

Considering all the evidence that sustains the conviction, measured against the deadly weapon element of aggravated assault as defined by the hypothetically correct jury charge for the offense, I conclude that a rational trier of fact could have found beyond a reasonable doubt all the elements of aggravated assault. Thus, I conclude the evidence was legally and factually sufficient. *See Jackson,* 443 U.S. at 319, 99 S.Ct. 2781; *Zuniga,* 144 S.W.3d at 484–85.

Accordingly, I concur with the majority's decision to overrule Trevino's fourth point of error.

## VIII. CONCLUSION

I respectfully agree to grant the motion for rehearing, overrule Trevino's points of error, and affirm the judgment.