Opinion filed January 15, 2015



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00331-CR

_____

## PABLO MORENO, III, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 42nd District Court**

**Taylor County, Texas**

**Trial Court Cause No. 24695A**

## MEMORANDUM OPINION

The jury convicted Pablo Moreno, III of the offense of aggravated assault with a deadly weapon. *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2011). The trial court assessed Appellant's punishment at confinement for twenty years in the Institutional Division of the Texas Department of Criminal Justice. In three issues on appeal, Appellant argues that he received ineffective assistance of

counsel at trial and that the evidence is legally and factually insufficient to support his conviction. We affirm.

*Background Facts*

Appellant was charged by indictment with the offense of aggravated assault. The indictment alleged that, on or about June 18, 2011, he intentionally and knowingly caused bodily injury to Ricky Gomez by shooting him in the chest with a handgun. Around midnight on June 19, 2011, Abilene Police Officer Paul Martinez was dispatched to a disturbance at Tim's Bait Shop, a bar located at 300 East Ambler Avenue. After Officer Martinez arrived at the scene, he found Ricky Gomez lying on the ground in the parking lot. Ricky had a gunshot wound in his chest.

The people at the bar on the night of the shooting presented varying accounts about what transpired. An emotional man approached Officer Martinez and told him what he had witnessed. The man showed Officer Martinez a nine-millimeter shell casing that was on the ground near the southeast corner of the building. Based on the location of the shell casing, Officer Martinez concluded that the shooting occurred in the parking lot.

Lucas Gomez testified that he was at Tim's Bait Shop with his cousin, Ricky Gomez. Lucas said that he helped security at the bar that night. Lucas testified that Appellant was inside the bar and that, at some point, Appellant became irate and belligerent. Another man working security asked Lucas to help remove Appellant from the bar because of the way that Appellant was acting. Lucas said that Appellant was aggressive, angry, and drunk and that Appellant was accompanied by a woman and by a man wearing a black cowboy hat. The man who was wearing the black hat is not identified by his full name in the record. One of the witnesses referred to the man as "Sapo." We will refer to the man as "Sapo" in this opinion.

When Lucas first asked Appellant to leave the bar, Appellant responded, "Get the f--k out of my face." Lucas testified that he started to escort Appellant out of the bar and that Appellant attempted to punch him. Lucas said that he grabbed Appellant and walked Appellant toward the exit of the bar. Near the exit, Appellant stumbled and fell backward onto the ground. During the fall, Appellant hit his head on the ground. Lucas testified that Appellant was groggy and lethargic. Lucas tapped Appellant in the face until he woke up.

Lucas said that Appellant got up and walked toward a vehicle in the parking lot. Lucas turned and noticed that Ricky was involved in an altercation in the parking lot with Sapo. Lucas saw Sapo's hands. According to Lucas, Sapo did not have a gun. Lucas said that someone shot Ricky in the chest. Lucas did not see who shot the gun.

Edward Anthony Carrillo testified that he was working at Tim's Bait Shop on the night of the incident. Carrillo said that Lucas put Appellant in a choke hold and escorted Appellant out of the bar that night. Carrillo testified that Appellant passed out and that Lucas revived Appellant by slapping him. Eventually, Appellant got up and went with a woman to a gray car. Carrillo said that Appellant quickly returned with a gun. Carrillo testified that Appellant stood behind a red car and that Appellant then shot Ricky.

Ricky testified that he watched Lucas escort a man out of Tim's Bait Shop on the night of the incident. Ricky went outside the bar into the parking lot. Sapo attempted to engage him in a fight. Ricky said that, as he was facing Sapo, someone shot him in the chest. Ricky testified that Sapo did not have a gun in his hands. Thus, Ricky was certain that Sapo did not shoot him.

Alexander Rubio testified that Appellant was related to Rubio's brother by marriage. Rubio said that he regarded Appellant as family. Rubio was working security at Tim's Bait Shop on the night of the incident. Shortly before midnight,

3

Rubio's boss, Elena Abila, asked Rubio to escort Sapo out of the bar because Sapo was causing a scene.

Before Rubio escorted Sapo out of the bar, Appellant asked Rubio to allow Sapo to stay. Rubio told Appellant that he could not let Sapo stay, and Appellant became angry. Rubio said that Appellant made an aggressive move toward him and that, then, another man who was working security "choked out" Appellant and dragged Appellant out of the bar. Appellant passed out, and the other man working security began slapping Appellant in the face. Rubio said that Appellant regained consciousness, got up, and ran to his car with his girlfriend.

Rubio said that Sapo engaged Ricky in an altercation in the parking lot. Rubio then saw Appellant standing between a silver car and a red car and holding a gun that appeared to be a nine-millimeter handgun. Rubio believed that Appellant was pointing the gun at him. However, Rubio then saw Appellant fire a shot from the gun, and the shot hit Ricky. Rubio caught Ricky as he fell backward. Rubio said that Appellant and Sapo jumped in the silver car and fled the scene.

Rubio testified that, after the shooting, Abila asked him not to return to work at Tim's Bait Shop because he refused to testify to Abila's version of the events that occurred on the night of the incident. Rubio explained that Abila wanted him to say that Sapo shot Ricky. Abila told Rubio that she witnessed the shooting. However, Rubio testified that he knew Abila did not witness the shooting because she was inside the bar at the time the shooting occurred.

A few days after the shooting, Rubio called Abila, and Abila recorded the conversation.[1] During the conversation, Rubio agreed with Abila that Sapo shot Ricky. Rubio testified that he "said what [Abila] wanted to hear" because he wanted to keep his job. Rubio said that Abila pressured him into changing his

---

[1]This recording was played for the jury.

4

earlier statement to her that Appellant shot Ricky. Later, Rubio again testified that Appellant shot Ricky.

Abila testified that she and her husband, Timothy, owned Tim's Bait Shop in June 2011. Abila testified that, on June 18, 2011, she asked Rubio to escort Sapo out of the bar after Sapo caused a scene. Minutes later, Abila saw Rubio and other men holding a man in a choke hold. Abila could not identify the man who was in the choke hold or see the man's face. Abila said that the man lost consciousness and fell to the ground in the doorway of the bar. According to Abila, Rubio and the other men slapped the man in the face until he awoke and then dragged him out of the bar.

Abila testified that, in the midst of the commotion, she stepped outside and saw Sapo coming toward the bar from across the street. She said that Sapo had a gun in his hand. Abila said that she ran inside the bar and told her employees to call 911 because "a man with a gun [was] fixing to come inside the building." Abila said that, out of the corner of her eye, as she was running into the bar, she saw Sapo shoot Ricky. She testified that she knew Ricky had been shot because he was "the only one [who] was standing in front of the guy with the gun."

Michael Cortez testified that he was working the door at Tim's Bait Shop on June 18, 2011. Cortez said that, at one point, Abila walked into the bar from outside and yelled that somebody was going to come inside the bar with a gun.

Rosalinda Fuentes testified that she was working as a bartender at Tim's Bait Shop on June 18, 2011. Fuentes testified that, when the shooting occurred, Abila was inside the bar helping her serve drinks.

David Carlson, MD provided treatment to Ricky at the hospital after the shooting. Dr. Carlson testified that Ricky's gunshot wound was "potentially lethal." Dr. Carlson noted that the bullet entered Ricky's left front chest and exited near his back right shoulder.

*Sufficiency of the Evidence*

We first address Appellant's challenge to the sufficiency of the evidence. In his second and third issues, Appellant contends that the evidence was legally and factually insufficient to support his conviction. We review a sufficiency of the evidence issue, regardless of whether it is denominated as a legal or factual claim, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Cada v. State*, 334 S.W.3d 766, 773 (Tex. Crim. App. 2011).

In conducting a sufficiency review, we defer to the jury's role as the sole judge of the credibility of the witnesses and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

Appellant contends that the evidence is legally insufficient to support his conviction because the prosecution's case was based on a theory of transferred intent that was not included in the jury charge. To support this contention,

6

Appellant asserts that the testimony at trial "illustrated that [he] was aiming at Alexander Rubio" when he shot Ricky. While Rubio testified that Appellant pointed the gun at him, the State did not present a theory to the jury that Appellant intended to shoot Rubio but instead shot Ricky. Thus, the State did not base its case on a theory of transferred intent. However, under the principle of transferred intent, Appellant is criminally responsible for Ricky's injury even if the evidence shows that Appellant intended to shoot Rubio, not Ricky. PENAL § 6.04(b)(2). Based on the evidence, our legal sufficiency analysis includes the law of transferred intent as part of the hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 239–40 (Tex. Crim. App. 1997); *Trevino v. State*, 228 S.W.3d 729, 737 (Tex. App.—Corpus Christi 2006, pet. ref'd).

The evidence, which we have summarized above, showed that Ricky was shot in the parking lot outside Tim's Bait Shop and that Ricky suffered serious bodily injury. After Ricky was shot, a nine-millimeter shell casing was found in the parking lot of the bar. Appellant was a patron at the bar on the night of the shooting. He was forced to leave the bar after he became angry and aggressive. Carrillo saw Appellant shoot Ricky while Appellant was standing behind a red car in the bar's parking lot. Rubio testified that he saw Appellant shoot Ricky with what appeared to be a nine-millimeter handgun. Rubio said that Appellant was standing between a red car and a silver car when Appellant fired the shot. Lucas and Ricky testified that Sapo did not have a gun.

Abila testified that the shooter was Sapo. As the sole judge of the credibility of the witnesses, the jury was free to disbelieve Abila's testimony and to believe the other witnesses' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). Viewing all the evidence in the light most favorable to the verdict and giving proper deference to the jury's credibility determinations, we conclude that a rational trier of fact could have found the essential elements of the offense beyond

a reasonable doubt. Accordingly, the evidence is sufficient to support Appellant's conviction. Appellant's second and third issues are overruled.

*Ineffective Assistance of Counsel*

In his first issue, Appellant argues that he was denied his Sixth Amendment right to effective assistance of counsel. Appellant contends that his trial counsel rendered ineffective assistance in the following respects: (1) failing to object to the prosecutor's statements that attacked Abila's credibility; (2) failing to object to hearsay and improper impeachment of Abila during the prosecutor's cross-examination of Abila; and (3) failing to object to the prosecutor's statements during jury argument that vouched for the credibility of Fuentes, whom the State called as a witness.

To determine whether Appellant's trial counsel rendered ineffective assistance, we must first determine whether Appellant has shown that his counsel's representation fell below an objective standard of reasonableness and, if so, then determine whether there is a reasonable probability that the result of the proceeding would have been different but for his counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 726 S.W.2d 53, 55–57 (Tex. Crim. App. 1986). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Strickland*, 466 U.S. at 694; *Hernandez*, 726 S.W.2d at 55. We must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and Appellant must overcome the presumption that, under the circumstances, the challenged action could be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000).

An allegation of ineffective assistance of counsel must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999).

8

"Direct appeal is usually an inadequate vehicle for raising such a claim because the record is generally undeveloped." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). This is true when evaluating the question of deficient performance where counsel's reasons for failing to do something do not appear in the record. *Id.* The Court of Criminal Appeals has said that "trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). If trial counsel has not had the opportunity to explain his actions, we will not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

Appellant did not raise his ineffective-assistance claims in a motion for new trial. Thus, his trial counsel has not been afforded an opportunity to respond to his allegations, and the record is silent as to his counsel's trial strategy in choosing not to object to the prosecutor's comments and questions.

Appellant first complains that his trial counsel was ineffective for failing to object to comments that the prosecutor made about Abila in the presence of the jury. To successfully show that trial counsel's failure to object amounted to ineffective assistance, an appellant must show that the trial court would have committed an error in overruling such an objection. *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011). The prosecutor made the following statements about Abila during his opening statement: "I don't know what she's going to tell you today. I know she refused to talk to me."

Relying on *Williamson v. State*, 771 S.W.2d 601, 608 (Tex. App.—Dallas 1989, pet. ref'd), Appellant contends that the prosecutor's statements improperly injected the prosecutor's opinion of Abila's credibility. We disagree. The prosecutor simply told the jury that he did not know what Abila would say if she

testified. The prosecutor's statements did not constitute an improper comment on Abila's credibility. Additionally, the prosecutor's statements were later supported by Abila's trial testimony. During her testimony, Abila acknowledged that she had refused to talk to the prosecutor's investigator. Because the prosecutor's statements were not improper, the trial court would not have erred in overruling an objection to the statements. Thus, Appellant cannot show that his trial counsel was deficient for failing to object to the prosecutor's statements. *Ex parte Martinez*, 330 S.W.3d at 901.

Before the State called its first witness, and in the presence of the jury, Appellant's counsel indicated that Appellant might call Abila as a defense witness. The trial court asked both the prosecutor and Appellant's counsel about Abila's availability to testify. Appellant's counsel said that Abila had been told to come back later in the trial and that she had been subpoenaed. The prosecutor then stated as follows: "I'm certainly not going to use her. I may use her in rebuttal, but I'm not going to vouch for her integrity." Appellant's counsel then said, "Well, if we discuss this anymore it should be outside the presence of the jury." Appellant's counsel then stated that he could secure Abila's presence at trial at an earlier time, if necessary. No further discussion about Abila's availability as a witness occurred at that time.

Based on the record, we cannot conclude that the prosecutor's comments, which were made in response to questioning by the trial court, improperly injected the prosecutor's opinion of Abila's credibility. Even if the prosecutor's comments were improper, Appellant's counsel may have utilized the sound trial strategy of not objecting to the comments in an effort to avoid emphasizing the issue of Abila's credibility. Because the record is silent as to counsel's trial strategy, if any, in failing to object to the prosecutor's comments, we conclude that Appellant cannot overcome the presumption that his counsel rendered effective assistance.

Appellant also complains that his trial counsel was ineffective for failing to object to questions that the prosecutor asked Abila in an effort to impeach her testimony. During her direct testimony, Abila said that she had been outside the bar and that she had seen Sapo holding a gun. During cross-examination, the prosecutor asked Abila questions related to what Cortez and Fuentes had stated about the incident. The following exchange took place:

Q. Mike Cortez was the man that was employed to watch the front door that night, wasn't he?

A. Collecting the money, yes.

Q. Were you aware that he said at all times that this shooting went down you were inside?

[DEFENSE COUNSEL]: I object to bringing in another statement. The person hasn't testified yet, reading it before the jury.

THE COURT: Overrule the objection.

[PROSECUTOR]: Q. Were you aware of the fact that Mike Cortez, the man that you employed to watch the front door, says you were inside?

A. (Pause)

Q. May I have an answer?

A. He said that?

Q. Were you aware that he said that?

A. Oh, no.

. . . .

Q. Were you aware of the fact that Rosalinda Fuentes says you were running the bar at the time of the shooting you were inside?

A. I was running the bar inside, yes I was. Like I said, I sent Alex because it was me and Alex and I sent Alex to go get the man. I did leave out from behind the bar to go outside.

Q. My question ma'am was were you aware that not only Mike Cortez but Rosalinda Fuentes placed you inside the building at the bar when the shooting occurs?

A. I was not aware of that. And there would be no way that she would know where I was at because she was at the back.

Appellant contends that the prosecutor's questions that related to Cortez's and Fuentes's version of the events were improper impeachment questions because, at the time the prosecutor asked the questions, Cortez and Fuentes had not testified at trial. Appellant asserts that his trial counsel rendered ineffective assistance by failing to object to the questions on hearsay and improper impeachment grounds.

Appellant's trial counsel objected when the prosecutor first asked Abila whether she was aware that Cortez placed her inside the bar when the shooting occurred. The trial court overruled the objection. Appellant's trial counsel may have reasonably believed that any further objection to the line of questioning would have been futile given that his initial objection was overruled. If Appellant's trial counsel held this belief, he may have developed a trial strategy not to object to the questions. Additionally, Appellant's trial counsel may have decided not to lodge further objections to the line of questioning because additional objections would have emphasized the evidence. Also, Appellant's trial counsel may have believed that Cortez and Fuentes would testify later in the trial, which they did. If Appellant's trial counsel held this belief, he may have developed a sound trial strategy not to object to the prosecutor's questions in order to give Abila the opportunity to answer the questions. The record is silent as to why Appellant's trial counsel did not object to the complained-of questions. On this

record, we cannot conclude that trial counsel's conduct was "so outrageous that no competent attorney would have engaged in it." *Garcia*, 57 S.W.3d at 440. Therefore, we cannot conclude that Appellant's trial counsel was ineffective for failing to object to the prosecutor's questions to Abila.

Appellant contends that, during closing argument, the prosecutor improperly vouched for Fuentes's credibility as a witness when the prosecutor stated, "And the only credible witness you had was the waitress who said Ms. Abila wasn't out there because she was at the bar helping make my beer order when I heard the shot." Appellant argues that his trial counsel was ineffective for failing to object to the prosecutor's statement.

Proper jury argument generally falls within four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008). Ordinarily, it is improper for a prosecutor to vouch for the credibility of a witness during his argument. *Thomas v. State*, 445 S.W.3d 201, 211 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd). However, a prosecutor may argue his opinion concerning a witness's credibility or the truth of a witness's testimony if the opinion is based on reasonable deductions from the evidence and does not constitute unsworn testimony. *Id.* In this case, the prosecutor made the statement about Fuentes's credibility in the context of explaining to the jury that it was the judge of the credibility of the witnesses. The prosecutor relied on the physical evidence that was found at the crime scene and the testimony of other witnesses to support his statement that Fuentes was a credible witness. The prosecutor's statement consisted of a reasonable deduction from the evidence and did not amount to unsworn testimony. Therefore, we conclude that the prosecutor's closing argument was proper. Appellant cannot

show that his trial counsel was ineffective for failing to object to argument that was not improper.  *Thomas*, 445 S.W.3d at 212.

Appellant has not satisfied his burden to meet the first prong of *Strickland* to establish ineffective assistance of counsel.  Additionally, even if we were to find that trial counsel provided ineffective assistance, Appellant has not established a reasonable probability that the result of the proceeding would have been different but for counsel's errors.  Therefore, Appellant has also failed to meet the second prong of the *Strickland* standard.  Appellant's first issue is overruled.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

JUSTICE


January 15, 2015

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

14