**AFFIRMED as modified; and Opinion Filed January 31, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-01459-CR

### REYNALDO PALOMO, Appellant
### V.
### THE STATE OF TEXAS, Appellee

### On Appeal from the Criminal District Court No. 4
### Dallas County, Texas
### Trial Court Cause No. F-1575896-K

# MEMORANDUM OPINION

Before Justices Lang, Brown, and Whitehill
Opinion by Justice Brown

A jury convicted appellant Reynaldo Palomo of capital murder, and the trial court assessed punishment at life without parole. In three issues, appellant contends the evidence was insufficient to support his conviction because it did not prove (1) his identity as the perpetrator of the murder, (2) that he intentionally murdered the complainant, or (3) a robbery. After reviewing the record, we overrule these issues. In two additional issues, appellant seeks modification of the judgment to accurately reflect the date judgment was entered and the offense for which he was convicted. We sustain these issues, and modify the judgment. We affirm the trial court's judgment as modified.

BACKGROUND

In June 2015, Mike Albanna and his girlfriend Sara Ewton ran two adjacent game rooms in a small strip mall in Dallas, Texas. During the early hours of June 29, 2015, Albanna was working in one of the game rooms (Game Room A). Ewton and a number of other people, including Maria del Carmen Velasquez and Leighann Palmer, were in the second game room (Game Room B).

Appellant, Richard Cardoso, and Miguel Machado arrived at Game Room A together in appellant's pickup truck. Machado knew Cardoso well, but had only seen appellant a few times. Before they arrived, appellant "hit the meth pipe." Appellant stopped Cardoso from doing the same, saying "wait till after." It gave Machado a "weird feeling."

Albanna knew both appellant and Cardoso as customers, but did not know Machado. The three men began to play eight-liner machines. After all of the other customers departed Game Room A, appellant blocked the front door and pulled a gun out. According to Albanna, appellant pointed the gun at him and said, "I'm here to rob you" and "I have to have some money." Albanna noticed Cardoso had moved into the game room's office and was "digging through everything." Albanna told appellant that he did not have any money and slowly walked toward Game Room A's back door, where he turned and ran to the front door of Game Room B. Albanna was scared appellant might kill him.

Machado testified to a slightly different version of events in Game Room A. He heard appellant and Albanna having a conversation and started paying attention after Albanna said "are you crazy." According to Machado, appellant said "something about, let me just borrow $1500," and Albanna responded that he "could get 50 or 60 people on ya'll." Machado had not heard what the men said earlier, but noticed that appellant was holding a gun. Machado froze, believing it to

be an attempted robbery. Although he had lost sight of Cardoso, the door to the office area was open and Machado believed Cardoso was in the office. Machado observed Albanna slowly and nervously backing away from appellant toward the game room's back door and then running out.

Albanna ran around to the front of the strip mall and banged on Game Room B's door. Velasquez was near the door, and she and several other individuals exited to see what was going on. Meanwhile, appellant, Cardoso and Machado emerged from the front door of Game Room A. Machado testified that Albanna, standing to their left, threw a cinder block towards them. Machado ran to the truck. Although he did not see appellant or Cardoso shooting, he heard appellant fire a number of gunshots from the front of the game rooms and Cardoso fire "quite a few" shots from near the truck. Machado also observed another person in the parking lot in a shooting stance, bobbing and weaving, but did not hear that person firing gunshots.

Albanna testified appellant and Cardoso were shooting at him from approximately 15 feet away. Appellant fired multiple shots while standing on the sidewalk near Game Room A's front door. Cardoso fired multiple shots as he moved toward the pickup truck. Albanna could see bullets coming toward him; he was shot eleven times. Complainant Velasquez, approximately three feet from Albanna, also was shot and died from a single gunshot wound.

Ewton heard the shooting start immediately after Game Room B's front door was opened. She did not know how many shots she heard, but thought the shooting "wasn't going to end" and "everybody was going to die that day." She tried to help Albanna as gunshots were still being fired. He was shot again as Ewton tried to drag him in Game Room B, and his blood splattered on her leg.

Leighann Palmer was in Game Room B at the time of the shooting and, based on the amount of gunfire, thought "they were in there to kill everybody . . . ." She had gone to Game Room A to get some change approximately 30 to 45 minutes before the shooting began. She knew

–3–

appellant, and he was not in Game Room A at the time. Albanna was planning to close Game Room A then, so Palmer believed he would not have let anyone else enter. Palmer acknowledged, however, that she had no idea whether appellant arrived after she left Game Room A.

After the shooting, appellant, Cardoso and Machado fled in appellant's pickup truck. As they drove away, Cardoso threw something out his window. Police later recovered a 40-caliber handgun from the same area, and DNA analysis confirmed that Cardoso was a major contributor of DNA on the handgun. The men abandoned the truck at a nearby intersection and fled on foot. Cardoso and Machado ran one direction; appellant ran the opposite way. Machado and Cardoso, wearing an empty holster, were arrested after hiding in a nearby house. Appellant was arrested a few days later.

Police recovered six fired 40-caliber cartridge casings from the strip center parking lot and twelve fired 9mm cartridge casings on the sidewalk in front of the game rooms where Albanna observed and Machado heard appellant shooting a weapon. A firearms examiner testified that all of the 40-caliber cartridge casings were fired from the recovered handgun and all of the 9mm cartridge casings were fired from the same unknown 9mm handgun.

Detective Scott Sayers interviewed Albanna after Albanna was released from the hospital. Sayers testified that Albanna identified appellant from a six-photo line-up as the shooter who pointed a gun at him both inside Game Room A and outside in front of the game rooms. Sayers also interviewed Machado, who denied knowing appellant. Machado also first told Sayers that Albanna and others from Game Room B shot at him, Cardoso, and appellant as they emerged from Game Room A. Machado later changed his story, saying that Albanna actually threw a cinder block. Sayers testified that it was common for suspects to initially minimize their role in an incident and later provide more information. After speaking with both Albanna and Machado, Sayers concluded that their stories aligned.

–4–

Appellant was charged with capital murder under section 19.03(a)(2) of the penal code. *See* TEX. PENAL CODE ANN. § 19.03(a)(2) (West 2011). The indictment alleged appellant intentionally caused the death of Velasquez by shooting her with a firearm, a deadly weapon, in the course of committing and attempting to commit the offense of robbery of Albanna. Following a trial, the jury found appellant guilty of capital murder. The trial court assessed punishment of a life sentence without the possibility of parole.

## APPLICABLE LAW

To review the sufficiency of evidence to support a conviction, we consider all of the evidence in the light most favorable to the jury's verdict and decide whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011). We defer to the jury as factfinder; it is the sole judge of the weight and credibility of the evidence and resolves any conflicts in that evidence. *Adames*, 353 S.W.3d at 860; *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). We determine whether the jury's necessary inferences are reasonable based on the "cumulative force of all of the evidence." *Adames*, 353 S.W.3d at 860.

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge for the case. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the prosecution's burden of proof or restrict its theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id*. A person commits capital murder if he intentionally causes the death of an individual in the course of committing or attempting to commit robbery. TEX. PENAL CODE ANN. § 19.03(a)(2). A person commits robbery if, in the course of committing theft, and with intent to obtain or

maintain control of someone else's property, he intentionally, knowingly, or recklessly causes bodily injury to another. *Id*. § 29.02(a) (West 2011). A person commits theft if he unlawfully appropriates property with the intent to deprive the owner of it. *Id*. § 31.03(a) (West 2011).

IDENTITY

In his first issue, appellant argues the evidence is insufficient to prove his identity as the perpetrator of the offense. The prosecution must prove beyond a reasonable doubt that the defendant is the person who committed the offense charged. *Miller v. State*, 667 S.W.2d 773, 775 (Tex. Crim. App. 1984). Identity may be proved by "either direct or circumstantial evidence, coupled with all reasonable inferences from that evidence." *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009). The testimony of a single eyewitness may be sufficient evidence to identify a defendant as the perpetrator. *See Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971).

The evidence shows that Albanna was familiar with and recognized appellant when appellant entered Game Room A. Thereafter, appellant brandished a gun in Game Room A and subsequently fired the gun in the direction of Albanna and Velasquez outside the game rooms. Following Albanna's release from the hospital, he positively identified appellant in a photo line-up as the individual who had pointed the gun inside Game Room A and as a shooter outside the game rooms. At trial, Albanna again identified appellant as the perpetrator. Machado also identified appellant at trial as the individual who pulled the gun in Game Room A and subsequently fired shots outside the game rooms.

Appellant, however, contends neither Albanna nor Machado were credible witnesses. He concludes Albanna was untruthful because there was evidence to dispute his testimony at trial regarding game room ownership and an individual known as "Mexican Mike," whom witnesses testified had broken into a gambling machine a few days before the offense. Appellant also

maintains Albanna's identification was unreliable because Albanna testified he could not "clearly" see the second and third man emerging from Game Room A, could not "see anything except bullets" when he first got shot, could not see when the police arrived because he was on the ground, and "wasn't 100 percent" after he was shot. According to appellant, Machado was not a credible witness because he was under indictment for the same offense. Finally, appellant cites the lack of physical evidence to establish his identity as the perpetrator.

Both Albanna and Machado, eyewitnesses to the offense, identified appellant as the perpetrator, and their testimony is sufficient evidence to support appellant's conviction.[1] *See Aguilar*, 468 S.W.2d at 77. The jury heard all of Albanna's testimony and the fact that Machado also had been indicted for capital murder; it was free to accept or reject the evidence, including accepting some portions and rejecting other portions of a particular witness's testimony. *See Bowden v. State*, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982). In doing so, the jury concluded that appellant was the person who committed the offense. No additional physical evidence was needed to corroborate the jury's finding. *See Aguilar*, 468 S.W.2d at 77. Viewing all the evidence in the light most favorable to the prosecution, we conclude a rational factfinder could have concluded that appellant was indeed the perpetrator of Velasquez's murder. Accordingly, we overrule appellant's first issue.

INTENT

In his second issue, appellant argues the evidence is insufficient to prove he intended to murder Velasquez. He contends there was no evidence of his intent to murder anyone other than possibly Albanna and, because the jury was not instructed on transferred intent, the prosecution

---

[1] The jury charge properly instructed the jury that it could not convict appellant based solely on the testimony of an accomplice unless the accomplice's testimony was corroborated by other evidence tending to connect appellant with the offense. *See* TEX. CODE CRIM. PROC. ANN. ART. 38.14 (West 2011).

could not rely on that theory to support his conviction. *See* TEX. PENAL CODE ANN. § 6.04(b)(1) (West 2011).

A person acts intentionally with respect to a result of his conduct when it is his conscious objective or desire to cause the result. *Id*. § 6.03(a) (West 2011). Intent is usually proven by circumstantial evidence. *Trevino v. State*, 228 S.W.3d 729, 736 (Tex. App.—Corpus Christi 2006, pet. ref'd). The jury may infer intent from a defendant's acts, words and conduct as well as the means used and the wounds inflicted. *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995); *Womble v. State*, 618 S.W.2d 59, 64 (Tex. Crim. App. 1981). A jury may infer specific intent to kill from use of a deadly weapon in a deadly manner unless it is reasonably apparent that death or serious injury could not result from the use of the weapon. *Adanandus v. State*, 866 S.W.2d 210, 215 (Tex. Crim. App. 1993); *see also Jones*, 944 S.W.2d at 647; *Godsey v. State*, 719 S.W.2d 578, 580-81 (Tex. Crim. App. 1986). And, if a deadly weapon is fired at close range and death results, the law presumes an intent to kill. *Womble*, 618 at 64-65; *Trevino*, 228 S.W.3d at 736. A firearm is a deadly weapon. TEX. PENAL CODE ANN. § 1.07(a)(17) (West 2011).

The jury heard evidence that appellant fired a number of gunshots in front of the game rooms and police recovered 18 fired shell casings at the scene, twelve of which were fired from the same 9mm handgun in front of the game rooms. Albanna could see the bullets coming towards him and, standing 15 feet from appellant, suffered 11 gunshot wounds. Velasquez, approximately three feet from Albanna, also was shot and died from a single gunshot wound.

To show he had no intent to kill Velasquez, appellant argues that he "was likely unaware" people were in Game Room B and "[t]he shooter was actively firing upon Albanna when the complainant stepped into the fire." Ewton, however, testified that the shooting began just after Game Room B's front door was opened so Velasquez and others could see what was happening.

Indeed, Albanna was shot once as Ewton tried to drag him in Game Room B.  And Parker, a defense witness, thought "they were in there to kill everybody . . . ."

The jury could have reasonably inferred appellant's intent to kill Velasquez from eyewitness testimony that he fired a large number of rounds from a handgun, a deadly weapon per se, in the direction of multiple people at close range and the fact that two of those people were shot, resulting in one's death.  *See, e.g., Trevino*, 228 S.W.3d at 737-38 (jury could reasonably infer defendant specifically intended to kill either or both vehicle occupants when he fired semi-automatic weapon into vehicle); *see also Vuong v. State*, 830 S.W.2d 929, 934 (Tex. Crim. App. 1992) (use of deadly weapon in a tavern filled with people is sufficient to support reasonable inference of specific intent to kill); *Medina v. State*, 7 S.W.3d 633, 636-37 (Tex. Crim. App. 1999).  Considering all of the evidence in the light most favorable to the verdict, we conclude there is sufficient evidence to prove beyond a reasonable doubt that appellant had the required intent to kill Velasquez.

The transferred intent theory may be properly applied when a defendant fires a weapon at an intended victim in a group of other people; the offense is murder whether the intended victim is killed or a different person in the group is killed.  *See* TEX. PENAL CODE ANN. § 6.04(b)(2); *Trevino,* 228 S.W.3d at 737; *Pettigrew v. State*, 999 S.W.2d 810, 812-13 (Tex. App.—Tyler 1999, no pet.).  The prosecution did not argue the transferred intent theory at trial, and the jury was not instructed on the theory.  As we have concluded that the jury could have reasonably inferred appellant's intent to kill Velasquez from the evidence presented at trial, we need not consider whether the evidence also was sufficient to support his conviction under a hypothetically correct jury charge including a transferred intent instruction.  Accordingly, we overrule appellant's second issue.

ROBBERY

In his third issue, appellant argues there is no evidence of an underlying robbery to support the capital murder conviction. Citing Machado's testimony, appellant argues there was no evidence appellant "spoke or threateningly brandished a gun in such a way as to indicate [he] intended to obtain [Albanna's] property." Appellant also notes that no money was actually taken from Albanna.

Evidence is sufficient to prove an underlying robbery for purposes of a capital murder conviction if it shows the defendant formed an intent to obtain or maintain control of property before or contemporaneously with the murder. *Shuffield v. State*, 189 S.W.3d 782, 791 (Tex. Crim. App. 2006); *Lincecum v. State*, 736 S.W.2d 673, 680 (Tex. Crim. App. 1987). The prosecution does not have to prove the defendant completed the theft. *Young v. State*, 283 S.W.3d 854, 862 (Tex. Crim. App. 2009); *Wolfe v. State*, 917 S.W.2d 270, 275 (Tex. Crim. App. 1996). If there is evidence from which the jury rationally could conclude beyond a reasonable doubt "that the defendant formed the intent to obtain or maintain control of the victim's property either before or during the commission of the murder, then the [prosecution] has proven that the murder occurred in the course of robbery." *Alvarado v. State*, 912 S.W.2d 199, 207 (Tex. Crim. App. 1995).

Machado testified he observed appellant holding a handgun while appellant and Albanna had words. Machado heard appellant say something about borrowing $1500, to which Albanna indicated he could get "50 or 60 people on ya'll." Machado nevertheless froze because he believed he was seeing an attempted robbery. The jury also heard Albanna's testimony that appellant blocked the front door of Game Room A, pointed a gun at Albanna, and said, "I'm here to rob you." At the time, Cardoso had entered the office and was "digging through everything." Albanna further testified that he ran around to Game Room B to "get away from them" because they were "trying to rob me."

Although Albanna's and Machado's versions of events were not identical, a rational factfinder likewise could have reasonably inferred that appellant brandished a gun and spoke threateningly in a manner indicating he intended to take money from Albanna. The State did not have to prove appellant actually completed the theft in order to establish the underlying offense. *See Young*, 283 S.W.3d at 862. Reviewing the evidence in the light most favorable to the verdict, there is sufficient evidence of an underlying robbery to support appellant's conviction. We overrule appellant's third issue.

### JUDGMENT

In his fourth and fifth issues, appellant seeks correction of the trial court's judgment to accurately reflect the date the judgment was entered and the offense for which he was convicted. If a record contains the necessary information, we may modify an incorrect judgment to correct clerical errors. TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529-30 (Tex. App.—Dallas 1991, pet. ref'd). Here, the judgment incorrectly reflects December 6, 2016 as the date judgment was entered, sentence was imposed, and sentence was to commence. The trial court, however, signed the judgment on December 9, 2016. The judgment also incorrectly recites that appellant was convicted of "capital murder/terrorist threat" despite the jury convicting appellant of capital murder as charged in the indictment. Accordingly, we sustain appellant's fourth and fifth issues and modify the judgment to reflect the correct date of judgment and sentencing as December 9, 2016 and the correct offense as capital murder.

We affirm the trial court's judgment as modified and order the trial court to enter an amended judgment reflecting these modifications.

/Ada Brown/

ADA BROWN
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

161459F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

REYNALDO PALOMO, Appellant

No. 05-16-01459-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 4, Dallas County, Texas
Trial Court Cause No. F-1575896-K.
Opinion delivered by Justice Brown;
Justices Lang and Whitehill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

We **REPLACE** "December 6, 2016" with "December 9, 2016" as the date judgment was entered, sentence was imposed, and sentence was to commence and **REPLACE** "capital murder/terroristic threat" with "capital murder" as the offense.

As modified, the judgment is **AFFIRMED**.


Judgment entered this 31st day of January, 2018.